[Civ. No. 5095. Fourth Dist. Feb. 10, 1956.]

JOHN H. HARRISON et al., Respondents, v. GEORGE
BOURIS et al., Appellants.

Welch & McFarland for Appellants.

Charles H. Carter for Respondents.

GRIFFIN, J.—Plaintiffs and respondents were the owners of 160 acres of land in the northwest quarter of Section 34, Township 6 South, Range 3 West, S.B.M., since 1906. It adjoins Section 27 to the north, owned by defendants and appellants and their predecessors. Since 1906, Antelope Road, a public road bordering and lying to the east of defendants' property, was reached by plaintiffs by means of a roadway from Section 34 across Section 27 to Antelope Road. Plaintiffs claim title to it by prescription and maintain that it was used by them and their predecessors openly, notoriously and adversely for over 35 years until it was blocked by defendants.

In November, 1952, Antelope Road became United States Highway 395, and was widened to the west and was fenced for the first time on the westerly boundary of the right-of-way of the highway. A gate was placed in the fence across the roadway in dispute by the State Highway Department. Defendants then locked the gate, which made it impossible for plaintiffs and the public to use the roadway to their property, and plowed up a great portion of the land over which it ran. Plaintiffs claim they demanded use of the easement thereafter but that defendants refused. Defendants deny generally these allegations, and allege they were the sole owners of

Section 27 since 1947; that theirs and the adjoining property were open fields and brush land and any use by plaintiffs or their predecessors was only by consent and neighborly accommodation and not adversely; that the roadway or pathway in dispute had been posted by a sign at the entrance on Antelope Road for over 10 years, which read: "NOTICE—NOT A PUBLIC HIGHWAY—PERMISSION TO PASS REVOCABLE AT ANY TIME—PROPERTY OF BOURIS BROS."; and this was not the most accessible or only means of egress and ingress to plaintiffs' property.

The court found generally in accordance with the allegations of the complaint, found the road was posted as indicated for over 10 years, but concluded that plaintiffs were entitled to a perpetual prescriptive right and easement to the uninterrupted use of the roadway running from the lands of plaintiffs (described in the complaint) across the lands of the defendants, which right-of-way connected with Antelope Road. A map showing the property of the plaintiffs and defendants and Antelope Road and a general course of the claimed right-of-way was attached to the complaint and designated Exhibit A. The judgment decreed that "plaintiffs be adjudged the owners of a prescriptive right and easement to the uninterrupted use of the roadway running from the lands of plaintiffs (the northwest quarter of Section 34) across the lands of the defendants (Section 27) to the westerly boundary of the United States Highway 395; that plaintiffs' title to said roadway be quieted; that plaintiffs have a perpetual easement in and to said roadway and that it be appurtenant to the land of plaintiffs aforedescribed," and that "defendants be enjoined and restrained from locking or in any way . . . closing any gateway or other obstruction across said roadway or in any other way obstructing or obliterating the roadway and from in any way preventing plaintiffs from using the same . . ."

The principal question on appeal is the sufficiency of the evidence to support the findings. It appears that Richard and Delia Harrison homesteaded a portion of Section 34 prior to 1897. Plaintiff John H. Harrison, the son, aged 58, was born on the property, and lived there until 1914. During this period the road in question was used by them to gain access to Antelope Road.. He testified his father died in 1939, and it was at that time the sign was erected and that the road was changed a little in 1931 to its present position by him, with his employees, as indicated on Exhibit 1 in

evidence; that this road was traveled by him no less than 10 times a year; that after defendants locked the gate erected at the entrance to that road, he asked defendants to unlock it and he was told by them that they did not want anybody going across there because they wanted to farm the land; that he never used this road with defendants' *"permission,"* but at all times "thought I had a right to it" and "nobody said anything about it"; that he "claimed the right to use it"; that the Goulacks previously owned Section 27 and they were quite friendly with his parents. Other witnesses testified they traveled this particular road (known as the Harrison Road) since 1936, and could not tell that it had been changed in any manner and that the first time the "private road" sign was noticed by them was in 1945.

Plaintiff Minnie Harrison McComb testified she was born on the property in 1900, used the road in going to school until she was 18 years of age, and to her knowledge this means of entrance to their ranch had never been abandoned; that they never sought permission to use the road because they believed "we owned the road . . . that's our road"; that they saw the sign there but thought nothing of it and continued to use the road and took their children to school over it because it was shorter that way.

Plaintiff Sarah P. Raxten corroborated the above-mentioned testimony and said she was friendly with defendants in 1941, when the sign was erected; that she consulted an attorney about her claimed right of way and discussed it with Mrs. Bouris, who told her they were going to close the road and that she told Mrs. Bouris she had talked with an attorney who told her it was a "legal road as long as we used it," and accordingly it was "our road," and that she said nothing more and they continued thereafter to use it.

Defendant Sam Bouris testified he and his brother Theodore bought Section 27 in 1924; that they were friendly with the Harrisons and they visited back and forth over the road in question and mutually used it for farming purposes; that in 1941 he placed the sign there because he didn't want the general public going over it; that the Harrisons never asked for nor did he ever give them permission to travel over this road, but he knew they were using it over the years and made no objection because it was only a friendly and neighborly gesture.

Defendant George Bouris testified accordingly and said a lock was placed on the gate so he would know who was coming

and going over the road; that plaintiffs could have come to his house and secured a key to unlock it but since this action was filed they would be unwilling to do that.

The claim of defendants is that plaintiffs failed to meet the burden of proof necessary to establish an easement by prescription over the defendants' property because there is no showing that the roadway was used openly, notoriously, with the claim of right, and hostile to the owners, continuously during the statutory period of time prior to the filing of their action; that on the contrary, the evidence shows that the use was spasmodic with no definite claim of right conveyed to the owners; that the road was clearly posted as private property, granting to the plaintiffs permission to pass over it as a neighborly act for a period of over 10 years just prior to and at the time the suit was filed; that even though a prescriptive right was obtained prior to 1941, when the sign was posted giving notice that the owner was granting only a permissive right to its use, plaintiffs lost such prescriptive right by using the roadway with full knowledge of the nature of the limitation of right, citing such authority as 17 California Jurisprudence 2d page 117, section 18; 17 American Jurisprudence page 980, section 71, and cases cited; *Dooling* v. *Dabel*, 82 Cal.App.2d 417 [186 P.2d 183] ; *Tarpey* v. *Veith*, 22 Cal.App. 289 [134 P. 367] ; *Jones* v. *Tierney-Sinclair*, 71 Cal.App.2d 366 [162 P.2d 669] ; and *Glatts* v. *Henson*, 31 Cal.2d 368 [188 P.2d 745].

■ The authorities are in accord that a prescriptive right to an easement in a roadway over the real property of another may be acquired only by clear evidence of adverse use, openly, notoriously, under a claim of title, and continuously asserted for the statutory period. (1 Cal.Jur. p. 522, § 22.) ■ The burden is ordinarily on the one who claims the prescriptive right to affirmatively prove these essential elements. It has been held that a sign, as here displayed, in itself tended strongly to negative any possible presumption that the use by the defendants and the public generally was adverse to the plaintiffs or under a communicated claim of right, and that such a sign clearly imports *permission* to use the roadway. (Jones on Easements, § 196; *Tarpey* v. *Veith, supra*; *Jones* v. *Tierney-Sinclair, supra*.)

■ The question of whether the use of an easement is adverse, under a claim of title, permissive, and with the owners' consent, and whether the nature of the use is sufficient to put the owner on notice, are ordinarily questions

of fact. All conflicts must be resolved in favor of the prevailing party, and the evidence viewed in the light most favorable to him. (*Arnold* v. *City of San Diego*, 120 Cal.App.2d 353, 356 [261 P.2d 33].)

■ In the instant case the court found in favor of plaintiffs on this issue. While the conflicting evidence of adverse use, prior to the posting of the sign, may have been open to two constructions, the trial court had the right to believe that the Harrisons used this claimed easement over the years indicated; that they never obtained permission of the Bourises and the previous owners to pass over it; that they maintained this right believing they had acquired it by such adverse use until the sign was posted by defendants. This conclusion is fortified by the actions of Mrs. Raxten when she approached Mrs. Bouris and told her she had seen her lawyer and was told plaintiffs had previously acquired such an easement and that the placing of the sign, as indicated, would not terminate or interfere with the rights previously acquired, and therefore the Harrisons adversely continued to use the easement until the gate was locked and the roadway was plowed up. The evidence and inferences deducible therefrom sufficiently support the finding. (*O'Banion* v. *Borba*, 32 Cal.2d 145, 148 [195 P.2d 10].)

■ It does not necessarily follow that an easement by prescription, once acquired, is lost by the method of the owner of the servient estate subsequently posting a sign to the effect that the property is private property. (Civ. Code, § 811; *Garbarino* v. *Noce*, 181 Cal. 125, 130 [183 P. 532, 6 A.L.R. 1433].) The finding and judgment against defendants in this respect are supported by the evidence.

The next complaint presented is more serious. Plaintiffs' complaint merely alleges that plaintiffs owned part of Section 34 and defendants owned Section 27; that plaintiffs and their predecessors used a "right of way from their property . . . over the property of defendants, which right of way connected with Antelope Road. A map of this right of way, showing the property of the plaintiffs and defendants and Antelope Road, is attached hereto and designated Exhibit 'A.' " Attached to the complaint is a portion of an unidentified map or drawing with broken lines meandering across Section 27 from the northwest corner of Section 34 to the Antelope Road. It does not indicate the true course, width or length of the claimed right of way or fix any given point as its beginning or terminus.

Defendants demurred to the complaint on the ground that the description was indefinite and that defendants were entitled to be informed of the definite course, the width, and other limitations of the claimed right of way over their property. The demurrer was overruled by another judge. Defendants complain of this ruling and there is some merit to the complaint. (*Green* v. *Palmer,* 15 Cal. 411 [76 Am. Dec. 492]; Civ. Code, § 3538; *Matthiessen* v. *Grand,* 92 Cal. App. 504 [268 P. 675]; *Leverone* v. *Weakley,* 155 Cal. 395 [101 P. 304]; *Lambert* v. *Haskell,* 80 Cal. 611 [22 P. 327]; *City of Los Angeles* v. *Signoret,* 50 Cal. 298.)

Without holding that the allegations and the description of the claimed easement in the complaint would be sufficient, and that evidence of a proper description would be allowable at the trial, we will consider the evidence produced. There was some incidental reference to a dirt road across Section 27 from plaintiffs' property, terminating at a point on the right of way several feet north of the gate, as indicated on the map, and that over a portion of this distance were certain posts, without wire, marked on the map in evidence (Exhibit IX) which dealt mainly with the freeway improvements. A map (Exhibit XV) was produced by the assistant road commissioner of that county, who testified he had no notes of any survey of the broken lines drawn across Sections 27 and 34 indicated thereon; that the map was drawn about 1948, but changes were made from time to time to note change of conditions, and that these broken lines did not indicate county roads and apparently were not intended to indicate an accurate description of the course of any easement, width of it, or place where it actually began or terminated. Photographs in evidence show certain meanderings of the roadway through the canyons and brush over Section 27, where a portion of the roadway still remained exposed after the other portions had been plowed up. It is apparent that the broken lines on the exhibit (XV) were not intended to represent the true course of the easement on the ground at the time the map was made.

The state right-of-way agent testified that Exhibit XIII was only a map print of State Highway 395 at that point and that the Harrison Road, as he first saw it, was located approximately to scale as indicated on the exhibit.

The findings of the trial court and judgment based thereon as to the course and description of the claimed easement involved, simply revert back to the complaint, finding as true

the allegations contained therein, and no further description of the easement is indicated. The judgment, as heretofore set forth, merely follows the language and allegations of the complaint. It is quite apparent from the complaint, the findings, and the judgment that it could not be determined with such certainty as to enable the party upon whose property the easement is imposed to know exactly what portion of his property is so claimed, the extent, and description of it so the easement could not be shifted, and whether such right is limited to ingress and egress of the parties served thereby for road purposes only, or whether it was open to the public in general. Such a finding and judgment appear to be necessary under the authorities. (*Weideman* v. *Staheli*, 88 Cal.App.2d 613, 617 [199 P.2d 351].)

 It is a fundamental rule that easements acquired by adverse user are limited to the uses made during the prescriptive period, and thereafter no different or greater use can be made of them except by grant or by further adverse user for the prescriptive period. (*Beyl* v. *Yasukochi*, 135 Cal.App.2d 638 [287 P.2d 863].)

In *Leverone* v. *Weakley, supra,* the court held that a judgment reciting in much more detail the description of the easement, was insufficient, and said, in reference to the complaint, at page 399:

"There is nothing in this to enable one to definitely locate on the ground the particular strip claimed to constitute the alleged road or highway. It entirely fails to locate the point of commencement, other than to place it on the southerly line of the southwest quarter of the southeast quarter of section 20, a line one quarter of a mile long. There is nothing to indicate that the way is so marked on the ground that the description given will identify it. If it could be held that the description was of a road actually marked out and constructed on the lands of defendant's testator, it might be definite enough, but such is not the effect of the language used."

In reference to the judgment it is said:

" 'This strip of land or road should be definitely described at least so that with the description in hand it could be readily located and could not be shifted at the will of the public. Its northern initial point should be fixed and the course of the road from its initial point over defendant's land made definite, and the point established at which it intersects the so-called Hildreth road. The width of the road should

be made clear. It is not sufficiently definite to describe it as "sufficient in width for the convenient travel and use by the public with teams, wagons and agricultural implements." ' "

The evidence in the instant case does show some departure from the original course of the claimed easement. It likewise shows that on the more level land the roadway has been plowed up and it is no longer discernible, so plaintiffs could not rely on the claim that presently or at the time of trial, the description given was of a road actually discernible and constructed on the lands of the defendant and so marked out on the grounds that the general description used in the judgment would identify it.

The portion of the judgment establishing an easement by prescription is affirmed. The remaining portion of the judgment is reversed with instructions to the trial court to take further evidence, if necessary, and to sign adequate findings and judgment, which will make it possible to identify and locate this easement on this ground.

Each party to pay own costs on appeal.

Barnard, P. J., and Mussell, J., concurred.