HEARD APRIL TERM, 1871.

## JOHNSTON *vs.* CHARLESTON.

Where a municipal corporation is charged by law with the duty of keeping in repair the streets and sidewalks within the corporate limits, want of ordinary care is the true measure of its liability, when it is charged with having caused the death of a foot passenger by its negligence in not keeping in repair a cellar door forming part of the surface of a sidewalk.

BEFORE GRAHAM, J., AT CHARLESTON, APRIL TERM, 1871.

Action by Mary Johnston, widow and administratrix of James Johnston, deceased, against the City Council of Charleston, to recover damages for the death of the intestate, caused, as alleged, by the negligence of defendant in not keeping in safe and good repair a cellar door, forming part of the surface of a street within the city.

So much of the case as relates to the questions considered by this Court was this:

Queen street is a street within the corporate limits of the city of Charleston, having a sidewalk for foot passengers, part of the surface

of which, consists of a cellar door on the premises of Mrs. O'Neal. On the 15th of March, 1870, the intestate was going along said sidewalk as a foot passenger, and, when he reached the cellar door, it broke under him, and he fell through it. His thigh was broken by the fall, and he died on the 21st March, six days afterwards.

Evidence was given by the plaintiff for the purpose of proving that the door was rotten and unsafe at the time of the accident, and by the defendant to prove that it was sound, safe and in good condition, and that it had been examined by the chief of police shortly before the accident, who discovered no unsoundness, and pronounced it sound, secure and safe.

At the conclusion of the argument, the counsel for defendant requested the presiding Judge to charge as follows :

1. That the cellar door upon the sidewalk in Queen street, where James Johnston is alleged to have been injured, was a lawful structure, that is, it was lawful for the City Council to have or permit a cellar door there.

2. That if the jury find that the injury to said Johnston occurred from a latent defect in said door, then the City Council cannot be held responsible to the plaintiff for any injury to said Johnston, unless the City Council had express notice of such defect.

3. That the City Council, without express notice, cannot be held responsible for any defect in said door, unless the defect was so notorious as to be evident to all who had occasion to pass that place.

4. That the City Council cannot be held responsible unless the accident occurred wholly through their negligence, and in no part through the negligence of said Johnston.

5. That as to the safety of said cellar door the City Council were bound to exercise only ordinary care and diligence.

Thereupon, the Court charged as follows :

*Gentlemen of the Jury :* The fact of your going to visit these premises has made my observations upon the law few and simple.

The Court will say that that cellar door was a lawful structure; that it was lawful for the City Council to put it there. And, also, that, in case any latent defect existed, the Council will not be responsible. But what is a latent defect? You have been to see that cellar door and can judge. A latent defect is one that cannot be discovered by a careful examination. Suppose the City Council appointed an improper officer to go and see that door, and he merely looked at the outside, and there was a defect in the inside. That would not be a sufficient examination to relieve the City Council, if

there was such a latent defect. If, by a careful observation, it could not be discovered, then the City Council is not responsible; but a mere casual observation, if there was a defect existing in that door, which, by careful observation, could be discovered, will not relieve the City Council of their responsibility; they would then be responsible.

As to the request of counsel for the defence, that the Court shall charge that this defect must be so notorious that all passers by can observe it, that is not good law, gentlemen of the jury. If a defect existed in this cellar door, which, by careful observation (which the City Council was bound to give,) could have been seen, and an accident had occurred thereby, then the Council are responsible; otherwise they are not responsible.

As to the fourth request by the counsel for the defence, that if the accident occurred by the fault or neglect of the deceased, why, certainly, he must answer for his own fault. But there is nothing in the testimony to show that. There is nothing in the testimony to show that the accident occurred from any fault or neglect of this unfortunate man. But you might consider this question, and if the jury think that because he died, therefore greater damages ought to be given him; then, you can take into consideration the fact that, perhaps, he may have contributed to his death, but not to the accident.

I don't know whether it is necessary for me to say that the City Council is liable for ordinary or only for extraordinary care; but in this particular case, if any defect exists in that cellar door, which a careful examination would discover, they are liable. And it was the duty of the City Council to examine these bars, to see that they were strong enough.

The defendants herein excepted to the refusal to charge as requested, and also to the charge, as follows :

1. They except to that portion of said charge, whereby the jury were instructed that "a latent defect is one that cannot be discovered by a careful examination."

2. They except to that portion of said charge whereby the jury were instructed that, if there were a defect in the cellar door, which, by careful observation could be discovered, a casual observation would not relieve the City Council of responsibility.

3. They except to that portion of said charge whereby the jury were instructed that it was the duty of the City Council to examine the bars (under the door) to see that they were strong enough.

4. And these defendants except to the refusal of the Court to charge as requested, as follows: That the City Council, without express notice, cannot be held responsible for any defect in said door, unless the defect was so notorious as to be evident to all who had occasion to pass the place.

5. And these defendants except to the refusal of the Court to charge as follows, as requested: That as to the safety of said cellar door the City Council were bound to exercise only ordinary care and diligence.

The jury found for the plaintiff $1,850.

The defendant moved to set aside the verdict, and its motion being denied, it appealed to this Court.

*Corbin*, City Attorney, for appellant:

I. The cellar door, in Queen street, having been admitted to be a lawful structure, the Court erred in refusing to charge that the City Council, without express notice, cannot be held responsible for any defect in said door, unless the defect was so notorious as to be evident to all who had occasion to pass that place. —Shearm. & R. on Neg., §§ 147, 148; *Mayor* vs. *Sheffield*, 4 Wal., 189; *Griffin* vs. *The Mayor of New York*, 9 N. Y., 456; *Wallace* vs. *Mayor of New York*, 18 How. Pr. R., 169; *Wightman* vs. *Cor. of Washington*, 1 Bl. U. S. S. C., 52; *Bacon* vs. *City of Boston*, 3 Cush., 174; *Winn* vs. *City of Lowell*, 1 Allen, 177; *Wendell* vs. *Troy*, 39 Barb., 329; *Congreve* vs. *Morgan*, 5 Duer, 495; *Davenport* vs. *Ruckman*, 37 N. Y., 570; *Nebraska City* vs. *Campbell*, 2 Blk., U. S. S. C., 590; Cooley's Const. Lim., 249; *Hart* vs. *Brooklyn*, 36 Barb., 226.

II. The Court erred in refusing to charge: That as to the safety of said cellar door, the City Council were bound to exercise only ordinary care and diligence.

Upon this request the Court said: "I don't know whether it is necessary for me to say that the City Council is liable for ordinary or only for extraordinary care, but in this particular case, if any defect exists in that cellar door, which a careful examination would discover, they are liable."

This plainly indicates more than "ordinary care and diligence." The defendants were entitled to the charge as requested.—Shearman & R., on Neg., §§ 149, 349; *City of Prov.* vs. *Clapp*, 17 How., U. S. S. C., 151; *Winn* vs. *City of Lowell*, 1 Allen, 177; *Raymond* vs. *City of Lowell*, 6 Cush., 524; *Willard* vs. *Newberry*, 22 Vt., 458;

*Lobdell* vs. *New Bedford*, 1 Mass., 155; Hilliard on Torts, Vol. 1, 115, § 38; Ib., Vol. 2, 390, § 9.

*Phillips*, for respondent:

"An Act to provide for compensation in damages to the families of persons killed by the fault of others." Acts of G. A., 1859, 825.

That the City Council have the exclusive ownership and control of the streets and sidewalks, and are bound to keep them free from obstructions and defects, injurious to person or property.

The City Council of Charleston shall be also vested with full power and authority, from time to time, under their common seal, to make and establish such by-laws, rules and ordinances, respecting the streets, lanes, harbors, and in general, every other by-law or regulation that shall appear to them requisite and necessary for the security, welfare and convenience of the said city. And the City Council may make assessments on the inhabitants or those who hold taxable property within the same, for the benefit of the city, as shall appear to them expedient.—Act of Incor., 1783, 7 Stat., 97.

The control of the streets was given to the Commissioners of Streets and Lamps. And by the Act of the G. A., of 1836, the name of the Intendant and Wardens was changed to Mayor and Aldermen of the City of Charleston, and all power and authority given by Acts of the G. A. and city ordinances were vested in them.—Ord. Nov. 20, 1806, Dig. of the Ors. from 1783 to July, 1818.

That the City Council always exercised the exclusive power and control conferred is evidenced by an ordinance, passed on the 6th February, 1869, where it is ordained: "It shall be his (the Captain of Police) duty, from time to time, to pass through the streets, lanes, alleys, squares and public grounds of the city, to observe all nuisances, obstructions and impediments thereon, or in the sidewalks thereof, and cause the same to be removed according to law. He shall report in writing immediately to the Mayor any defect he may discover in any of the streets, lanes or alleys of the city. It shall be his duty to enforce and carry into effect all laws and city ordinances; to be vigilant to detect and bring to punishment all offenders against the same."—Sec. 6, City Ordinances, 67, 1871.

1. Exception. Latent is from the Latin, *latens*—hidden, concealed, secret.—Johns. Dic.

2. Exception. That if there was a defect in the cellar door, which, by careful observation could be discovered, a casual obser-

vation would not relieve the City Council of responsibility. A municipal corporation, having the exclusive care and control of the streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; if this duty be neglected, and, in consequence thereof, any one is injured, the corporation is liable for the damage sustained.—2 Bla. U. S. R., 419; *Chicago City* vs. *Robbins.*

A municipal corporation is responsible for damages where a duty specially enjoined upon a corporation as such has been wholly neglected by its agents, although the agents were properly selected and necessarily employed.—3 Hill, N. Y. R., 612; *Mayor of New York* vs. *Furze.*

A municipal corporation, with control of its streets, and power to raise funds to repair them, is liable if it permits them to be out of repair for an injury thereby sustained by an individual, without any negligence of his own.—5 Sand., 289; *Hutson* vs. *Mayor of New York*, 5 Selden, 163.

The absence of negligence on the part of the plaintiff, contributing to the injury, must be established, but in default of proof either way it is presumed.—4 Smith., 248; *Button* vs. *Hudson.*

Where such a duty of general interest is enjoined, and it appears from a view of the several provisions of the charter that the burden was imposed in consideration of the privileges granted and accepted, and the means to perform the duty are placed at the disposal of the corporation, they are clearly liable to the public if they unreasonably neglect to comply with the requirement of the charter; and it is equally clear when all the foregoing conditions concur, that, like individuals, they are also liable for injuries to person or property arising from neglect to perform the duty enjoined, or from negligence or unskillfulness in its performance.—1 Black's U. S. R., 50; *Weightman* vs. *Corporation of W.*

3. Exception. That it was the duty of the City Council to examine the bar. The existence of obstructions in a highway is such evidence of negligence as requires explanations from the municipality, in order to escape liability for damages resulting therefrom.— 4 Wal. U. S., 189, *Mayor* vs. *Sheffield*; Shear. & Red. on Neg., 147; 25 Verm., 162, *Howe* vs. *Castleton*; Shear. & Red. on Negligence, 176.

4. Exception. That the City Council was without express notice.

It is certainly true, as a general proposition, that before the cor-

poration can be held liable in this class of cases, it must be shown that they know of the existence of the cause of injury, or had been notified of it, or such a state of circumstances must be shown that notice would be implied.—4 Wal., 196; *Mayor* vs. *Sheffield.*

To what extent negligence may be predicated of the acts or omission of a municipal corporation, as such, in the exercise of its public functions, must depend upon the nature and extent of its obligations, a violation of which constitutes the negligence complained of; for negligence can be predicated of the acts of a person of any public work only where the duty of doing the work is imposed on him by law.—Shear. & Red. on Negligence, 147; *Id.,* §§ 132, 135 and 136; and see, particularly, §§ 146 and 148.

March 11, 1872.    The opinion of the Court was delivered by
WILLARD, A. J.    The action was brought, under the statute, by the plaintiff, as the widow of James Johnston, deceased, on account of injuries received by the said James Johnston, by falling through a cellar door forming part of the sidewalk of Queen Street, and causing his death, on the ground that the cause of the injuries was the negligence of the defendants, a municipal corporation, in suffering the cellar door to be in an insecure condition, rendering the passage way unsafe for foot passengers.

The jury rendered a verdict for the plaintiff, under instructions by the Court, to which exceptions were taken, both as to matters charged and refused.

Two propositions are advanced by the exceptions: first, assuming the liability of the defendants, for injuries through their negligence, in not keeping the sidewalks in safe repair, and assuming that the side walk, at the place in question, was not in a due state of repair, as it regarded the safety of foot passengers, that the defendants are not liable unless either express notice of such defect is shown, or unless the defect was so notorious as to be evident to all who had occasion to pass the place; and, second, that they are only liable for the want of ordinary care and diligence.

These propositions, as will be seen, involve different measures of responsibility; but if either affords the correct measure applicable to the case, then the Court, as requested by the defendants, was bound to submit such proposition to the jury, and failing to do so is error.

The charge contains the following language: "I don't know whether it is necessary for me to say that the City Council is liable

for ordinary, or only for extraordinary care ; but in this particular case, if any defect exists in that cellar door, which a careful examination would discover, they are liable."

The charge contains other observations bearing on the same point, but the language above quoted may be regarded as fairly embodying the view of the law, under which the jury found their verdict.

The true rule of liability is that contained in the last proposition advanced by the defendants, that they were bound only to ordinary care and diligence, as it regards the safety of the passage way over the cellar door. The cellar door in question formed part of the surface of the sidewalk, used by foot passengers for the purpose of passage, and was within the duty of repair, as incumbent on the City Council.

The verdict must be regarded as consistent with the idea that the structure in question was a lawful structure, inasmuch as the jury were so charged. Or, in other words, that the occurrence of this cellar door, as part of the surface of the passage way, in its connexion with the user of the open space beneath it, by the owner of the adjacent property, as means of access to the lower portion of his premises, was not a nuisance or unlawful obstruction of the common highway. Nor can the verdict be questioned in this respect, as no exception appears to have been taken on that account by the plaintiff.

There is no good ground to doubt the correctness of this view. In the case of *Wendell* vs. *Troy*, 39 Barb. S. C., 329, referred to by the appellants, the proposition was advanced, that "in regard to streets and highways, their use is designed for the public for the purpose of passage, travel and locomotion, and the use of them by an individual simply for his own convenience and accommodation, unaccompanied with the public user just mentioned, as for drains, sewers, vaults or cess pools, is unauthorized, and essentially a nuisance, and makes the party building or maintaining such nuisance liable for all damages sustained in consequence of the improper appropriation of the street or highway to such mere personal use."

If this is sound, it would follow that, when such user is authorized by the city, the latter would become liable, to the same extent as the person actually creating the nuisance ; such was the view taken in that case, the city of Troy being held liable for damages resulting from the caving in of a private drain, laid under a public street, without regard to any proof of particular negligence on the part of the city.

The conclusion, in the case last cited, rested upon the erroneous assumption that individuals could not rightfully acquire, or hold, any personal interest, privilege or license in either the surface or soil of a public street. This proposition is not true of a country highway, for such an interest may be enjoyed, either by the owner of land adjacent to the highway, or by the grant or license of such owner, although subject to the common and public user of the highway, as such. City streets are highways, having certain peculiar attributes; the ownership of the soil of the street may be vested in the municipal corporation, instead of in the adjacent owner; and the user, itself, is more comprehensive, both as it regards the surface and the soil beneath it. A street is, ordinarily, designed as a means of affording passage, transportation, light, ventilation, drainage, and access to the particular dwellings abutting upon it. The right of user is not limited to the surface, but extends to the soil beneath the surface, and has been termed an "*urban servitude.*"

Without limiting the extent to which the public may claim an exclusive right to the actual occupation of the surface or soil, it is safe to say, that when the soil beneath the surface is not needed for any such public purpose or common user, it may, subject to the license and consent of the corporation, be used by the adjacent proprietor for a purpose not inconsistent with the public and common right of user, and which affords to him a peculiar and personal advantage in respect to any of the foregoing objects, for which a highway is designed. In other words, he may; by the license of the corporation, have the right to lay a private drain under the street, or to have an open space or area for light and ventilation, or for access to his premises, provided the public and common user is not interfered with. When the ownership of the soil is vested in the city, it is clear that its license is equally good authority to justify such particular use by the adjacent proprietor. The foregoing view is sustained by *Chicago* vs. *Robbins*, 2 Black, U. S., 418; *Bacon* vs. *Boston*, 3 Cush., 174.

Under the verdict, it must be assumed that the opening into which the plaintiff's husband fell, was for a purpose within the class of general objects for which streets are designed, and that, although the adjacent proprietor was enjoying thereby a particular and individual advantage, yet that such enjoyment was justified by the license of the city.

The city was bound to see that the opening was properly covered. *Chicago* vs. *Robbins*, 2 Black, 418. It is not to be assumed or in-

ferred, that the structure designed to cover the opening was defect-ive, either as to plan, materials or workmanship; on the contrary, it must be assumed, under the verdict, that the defect arose subse-quent to its construction, either through injury received, or by rea-son of natural decay.

Hence, it follows that the liability of the corporation must be considered solely under the duty to repair and keep safe. In such case their liability for the non-performance of such duty is measured by what ordinary care and diligence demands. *Weightman* vs. *Washington*, (1 Black, U. S., 39,) places the liability of a munici-pal corporation, in such cases, on the same footing as that of a pri-vate individual. In *Winn* vs. *Lowell*, (1 Allen, 177,) it was held, in reference to the duty of repair, that "the city is not bound to take the highest possible care, but only ordinary care. They are not in-surers against accident."—Shearm. & Redf. on Negligence, Section 149.

The charge, that "if any defect exist in that cellar door, which a careful examination would discover," the defendants were liable, should have been limited, by narrowing down the duty of the de-fendants in detecting the existence of such defect, to what was demanded by ordinary care and vigilance. As the charge stands, it might be interpreted as requiring the exercise of more than ordi-nary care.

It is in proof that means were taken by the defendants to ascer-tain the safety of the cellar door previous to the accident. Of the sufficiency of the means under the rule, the jury were entitled to judge. The charge could not properly relieve them of the duty of applying the facts to the rule of law requiring ordinary care. On the other hand, the request to charge that either express notice or a defect so notorious as to be evident to all who had occasion to pass that place, must be shown before defendants can be charged, is too broad to square with the rule of ordinary care and dili-gence.

One charged with the care of a machine or structure of such na-ture that the consequences of a defect might prove dangerous to life or property, is bound, by the rule of ordinary diligence, to a higher degree of care than a person charged with no such duty, though not compelled to look beyond the safeguards sanctioned by common use in such cases, as he would be if bound under the rule of extraordinary care.

The city, having the care of the streets, is bound clearly to a

higher degree of care, as it regards obstructions, than a mere passenger along the streets busied with his own interests. Where the defendants are not bound, within the limits of ordinary care, to look for defects, in order to charge them with any such defects, notice of its existence must be brought home to them, either express or inferential, but it is too much to say that, when a defect is patent, they are under no greater responsibility to see it than a mere passer by.

The charge is clearly defective in not presenting to the jury the true measure of the duty of defendants, out of which their supposed liability springs, namely, the exercise of ordinary care and vigilance in keeping the surface of the streets, including the structures forming part thereof, in repair, so as to be safe for passengers.

The judgment and verdict should, therefore, be set aside, and a new trial ordered.

*Moses,* C. J., *and Wright,* A. J., concurred.