CHRISTOPHER TIERNAN, APPELLEE, v. THOMAS J. THORP, APPELLEE; CITY OF LINCOLN, APPELLANT.

FILED FEBRUARY 28, 1911.    No. 16,319.

1. **Municipal Corporations: EXCAVATIONS UNDER STREETS.** Under the charter of the city of Lincoln as contained in chapter 13a, Comp. St. 1893, the city council had power to grant the right to a lot owner to excavate a room under an alley adjacent to his lot to be used as a boiler and coal room, under suitable regulations protecting the public in the free, safe and unobstructed use of the alley.

2. ———: ———: PRESUMPTIONS. When the evidence shows that an ordinance was enacted in 1892 authorizing such excavations, and that the same was thereupon made by the lot owner and a boiler installed therein, and that the excavation has been ever since that time used by the lot owner for such boiler room for the heating of a large building on such lot, and that the same was safely and securely covered and maintained by the lot owner, it will be presumed, in the absence of proof as to the terms of the ordinance, that the ordinance was complied with in the construction of said excavation, and that the work was done with the approval of the city council.

3. ———: ———: AUTHORITY TO REMOVE. After such excavation has been so maintained and used for more than 15 years, the city authorities cannot summarily declare it a nuisance and destroy or remove the same as such.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*C. C. Flansburg* and *L. A. Flansburg,* for appellant.

*E. P. Holmes, G. L. De Lacy* and *R. S. Mockett, contra.*

SEDGWICK, J.

The district court for Lancaster county enjoined the defendant, the city of Lincoln, from interfering with, removing or destroying repairs made by the plaintiff in the alley at the rear of the property owned by the plaintiff, and the city has appealed.

The petition alleged that the defendant Thorp was interfering with this property and threatening to continue doing so. He answered denying these allegations, and the court found in his favor. As the plaintiff has not appealed, the defendant Thorp is no longer interested in this litigation.

On November 29, 1892, the owner of this property applied to the city council for "permission to excavate in the alley of said building for the purpose of storage for coal," and the record of the proceedings of the city council introduced in evidence recites that "the ordinance to authorize the owner (of the real estate on which the building

stands) to construct an areaway in the alley in said block to the full width of said alley, and to provide for arching the same, and keeping said alley in suitable condition for travel, * * * was put to passage, and the required pass on the vote, ayes: Chapman, Daily," etc., naming 12 councilmen, and reciting that two councilmen, naming them, were absent. These two entries appear to be all of the record in regard to the matter. Thereupon the owner of the property constructed a room under the alley about 90 feet in length and the full width of the alley, 16 feet, and about 9 feet in depth. In this room he installed a boiler for heating the building, which is a four-story building. The plaintiff and his grantors have used this room for a boiler room and for the storage of coal from that time continuously until the commencement of this action. The room is covered with an arch of brick and concrete supported by iron "I" beams and is covered over with cement. It has been continuously used for travel, and there is no evidence that it was ever allowed to become unsafe, nor is there any serious complaint in that regard. The covering of this room is about 18 inches higher in the center than the level of the streets at either end of the alley, and slopes gradually toward the ends of the alley. It appears to have been constructed in accordance with the surface of the ground at that time. Just before the commencement of this action in 1908, some of the employees of the city began breaking up the covering of this room with the avowed intention and purpose to remove the covering and fill up the excavation and reduce the grade to conform with the level of the streets at the ends of the alley. It is claimed that the city council had ordered this to be done, and it is intimated that an ordinance has been passed for that purpose. There is no competent evidence in the record that this covering of the area was not in accordance with the original grade as established or adopted by the city, and the assistant city engineer testified that "in case the alley is about level we sometimes put a hump in the center," meaning, as we understand it, that it is not un-

usual in such cases in establishing the grade of the alley to raise the center somewhat so as to facilitate drainage.

The answer of the defendant alleges that "the excavation and the roof over same maintained by plaintiff in the public alley of the city of Lincoln is an unlawful obstruction therein and a nuisance, and it is made the duty of the defendant, the city of Lincoln, by the statutes of Nebraska through its proper officers to remove the same; that this defendant is about to proceed to grade and pave said alley, and the said excavation and roof over the same interfere with such improvements, and it is necessary that the same be removed in order that such improvements be properly made and such alley be restored to a safe condition for the public use," with a general denial.

1. It is contended that the city council was without authority to authorize this construction in the alley, and that there is no evidence that the city ever did authorize any such construction as was in fact made. It appears, as already stated, that there was an ordinance passed authorizing the then owner of the property under whom the plaintiff now claims to "construct an areaway in the alley * * * to the full width of said alley, and to provide for arching the same, and keeping said alley in suitable condition for travel." We are not informed as to the details and language of the ordinance. The work was one of public notoriety. The city authorities must have taken notice of the manner in which it was being done, and we have recently held that under such circumstances it will be presumed that the work was done pursuant to the ordinance, and in compliance with its terms, and with the approval of the city authorities. *City of Omaha v. Philadelphia Mortgage & Trust Co., ante,* p. 519.

The authority of the city council to authorize such use of the streets and alleys is thoroughly discussed in the briefs and many authorities cited. It is, of course, conceded that the city council cannot deprive the public of the ordinary use of the streets and alleys of the city for travel and other necessary and usual public purposes.

Any private use thereof which substantially interferes with such public use is unlawful, and it may be conceded that any attempt of the city authorities to authorize such use of the streets and alleys would be *ultra vires*. The care and control of the streets and alleys is confided to the city council. The council must determine, in the first instance, what is and what is not an improper interference with the public use of its streets and alleys. The council must be allowed some discretion in such matters, and its action will not be interfered with by the courts unless it clearly violates some public or private right.

The privilege of excavating under sidewalks and streets for coal rooms, vaults and subways is of great value and convenience, and, if properly regulated and controlled by the authorities, may be used with little or no inconvenience to the public. Judge Dillon suggests that the right of the lot owner in this respect does not depend upon his ownership of the fee in the streets. 2 Dillon, Municipal Corporations (4th ed.) sec. 699. The same author quotes with approval, and as of general application, the following from the opinion of the supreme court of Illinois, in *Nelson v. Godfrey,* 12 Ill. 20: "We are not prepared to admit that the defendant could, by reason of his ownership of the adjoining property, claim the absolute right to take up the sidewalk and extend his coal cellar under it; but as such a privilege is a great convenience in a city, and may with proper care be exercised with little or no inconvenience to the public, we think that authority to make such cellars may be implied in the absence of any action of the corporate authorities to the contrary, they having been aware of the progress of the work. * * * Neither the public nor other individuals can derive any possible advantage from such a use of the sidewalk, but it is solely for the benefit of the person thus using it, and he must see to it that he does not endanger the safety of others, and that he incommodes the public as little as possible."

It may be questionable whether the owner of the adjacent lot can claim this privilege as a right in the absence

of any statute governing the matter. Courts have differed in opinion upon this point. The charter of the city of Lincoln when this work was done provided that the city should have power by ordinance "to remove all obstructions from the sidewalks, curbstones, gutters, and cross-walks at the expense of the owners or occupiers of the grounds fronting thereon, or at the expense of the person placing the same there, and to regulate the building of bulkheads, cellars, and basementways, stairways, railways, window and doorways, awnings, hitching posts and rails, lamp posts, awning posts and all other structures projecting upon or over adjoining excavation through and under the sidewalks in said city." Comp. St. 1893, ch. 13a, art. I, sec. 67, subd. IX. It is suggested that the last clause limits the entire section, but cellars, basements and railways do not project over sidewalks, and the legislature must have intended this section to extend to streets and alleys. The power to regulate these things having been given by the legislature, it must have been intended that they should be allowed under suitable circumstances and with proper regulations protecting the public in the free and unrestricted use of the streets and alleys. We conclude that the city council had power to authorize this use of the alley by ordinance, and did so authorize it in 1892.

2. It is contended that the city council in the exercise of the police power, and the general power given it by statute over its streets and alleys, may declare this "excavation and the roof over same * * * an unlawful obstruction and a nuisance," and that it is the duty of the city "to remove the same," and that the city may proceed to "grade and pave said alley" and "remove the excavation and roof over the same" for that purpose. It will be seen from the above quotation of the answer that this is the entire defense of the city. There is no allegation of any fact from which it can be seen that public travel or any other public use of the alley is in any way interfered with, nor that the plaintiff has in any way neglected

his duty in regard thereto, nor that any ordinance has been enacted fixing or changing the grade of the alley, nor that plaintiff has refused to lower this covering of the excavation so as to admit of change of grade, nor that any proceedings have been taken looking to a condemna-, tion of plaintiff's property for public use.

There is in evidence a resolution and ordinance, and proof of publication of the ordinance, making this alley a paving district, ordering it paved and the cost thereof assessed against the property in the district. These were not within the issues tendered by the answer. It was in pursuance of this ordinance that the city proceeded to remove the excavation and roof as a public nuisance.

We have already seen that this excavation was not unlawful, and therefore, of course, not a nuisance at its inception. If it is such now, when did it become so? Could the city have declared it a nuisance immediately after authorizing it, and its construction at great expense pursuant to that authority? If not, when did that right on the part of the city accrue? We think that the city having authorized the construction and maintenance of this excavation and covering, and the grantee of this right having acted upon it and expended large sums of money in constructing this improvement, the city cannot now summarily destroy this property as a public nuisance. *Agnew v. City of Pawnee City,* 79 Neb. 603; 2 Dillon, Municipal Corporations (4th ed.) sec. 675; *Gregsten v. City of Chicago,* 145 Ill. 451; *Crocker v. Collins,* 37 S. Car. 327, 34 Am. St. Rep. 752; *City R. Co. v. Citizens Street R. Co.,* 166 U. S. 557. See, also, cases cited by Voorhees, J., in *Mill Creek Valley Street R. Co. v. Village of Carthage,* 18 Ohio C. C. Rep. 216, affirmed in 62 Ohio St. 636.

These are the only questions presented by the pleadings, and the judgment of the district court thereon is right, and is

AFFIRMED.