[Civ. No. 23333.   First Dist., Div. Two.   May 24, 1967.]

WILLIAM K. TUCKER et al., Plaintiffs, Cross-defendants and Respondents, v. THEODORE A. WATKINS et al., Defendants, Cross-complainants and Appellants.

Morris M. Grupp and G. H. Van Harvey for Defendants, Cross-complainants and Appellants.

Charles M. Thomas, Jr., Huber & Goodwin and Robert D. Prior for Plaintiffs, Cross-defendants and Respondents.

AGEE, J.—Plaintiffs sought to enjoin defendants' use of a country roadway traversing plaintiffs' land. Defendants cross-complained to enjoin plaintiffs' construction of any barriers across said roadway. The trial court granted the relief sought by plaintiffs and defendants appeal.

In 1962 defendants entered into possession of a 1200-acre parcel of land in Humboldt County. The south fork of the Eel River courses through this parcel in a northeast to southwest direction. Approximately 300 acres lie south of the river. Since 1939, plaintiffs have been the owners of a 30-acre parcel south of the river and adjacent to defendants' south 300 acres on plaintiffs' western boundary line.

Until 1938, Humboldt County maintained Camp Kimtu Road (a dirt road) parallel to the river along the *southern* bank. The road passed through plaintiffs' land and into defendants' south 300 acres, forded the river, and terminated at what is now Sprowel Creek Road.

In 1938 the county constructed Sprowel Creek Road parallel to the river along the *northern* bank and has maintained it ever since. It provides direct, year-round access to all of defendants' land *except* the south 300 acres.

Since 1938 the county has expended no funds to maintain the superseded Camp Kimtu Road. At the present time, the road begins at Moody Bridge to the north, where it connects with Sprowel Creek Road on the northern bank of the river, runs 1.5 miles south along the southern bank of the river, and terminates at a point on plaintiffs' land 250 feet in from the eastern boundary.

Annual flood waters have obliterated that portion of the road which at one time continued along the southern bank of the river, through plaintiffs' and defendants' lands, and terminated at the ford on defendants' land.

The records of Humboldt County do not indicate that at any time it owned a right-of-way, or other property interest, for that portion of Camp Kimtu Road located on either plaintiffs' or defendants' property. Current maps of the county road system show the road terminating at the eastern boundary of plaintiffs' land.

In 1948 plaintiffs constructed a gate at their eastern boundary where Camp Kimtu Road now visibly terminates. Thereafter, plaintiffs and defendants' predecessor in interest treated the road as if it were abandoned and cooperated with each other in exercising exclusive dominion over their respective lands on which Camp Kimtu Road had been located.

Beginning in 1949 West Coast Sawmills, Inc. would contract with plaintiffs and defendants' predecessor in interest for a one-year right-of-way over their properties in return for a certain quantity of timber.

Each year West Coast would reconstruct the road from plaintiffs' gate to defendants' ford, connecting with Sprowel Creek Road. This is the same annual operation which the county had undertaken prior to 1938. There is no evidence that West Coast followed the *exact* course of the old road as it had existed until 1938.

Plaintiffs and defendants' predecessor in interest also allowed individuals purchasing gravel from their respective properties to use this road. To some, the road was known as the "West Coast Road."

At the request of plaintiffs and defendants' predecessor in interest, West Coast posted signs at both ends of the road over their properties, which signs declared that the road was private.

In 1951, when the county had to repair a portion of Sprowel Creek Road, it purchased from plaintiffs and defendants' predecessor in interest a 90-day right-of-way over an unspecified portion of their properties for a temporary detour.

The contract was executed in April, and the county merely used the road, as well as a bridge at defendants' ford, already under construction by West Coast. In this manner, the county could detour traffic from Sprowel Creek Road across Moody Bridge, run along the river on the southern bank, through plaintiffs' and defendants' properties, and connect again with Sprowel Creek Road at defendants' ford.

There is no evidence that the disputed portion of the road was used by the general public at any other time since 1938. Plaintiffs allowed fishermen to *walk* in over their land, either along the road built by West Coast or along the river.

It was agreed at pretrial that the Humboldt County recorder's office does not contain a copy of a formal resolution of the board of supervisors abandoning Camp Kimtu Road.

On appeal, plaintiffs concede "that the road in question was once a public road which was never legally abandoned." Since a county road, once properly established, continues to exist until properly abandoned as prescribed by statute, it must be concluded for the purposes of this appeal that Camp Kimtu Road does in fact exist.[1] (See Sts. & Hy. Code, § 901;

---

[1]The pretrial order specified essentially two issues: one, whether the road was legally abandoned; two, whether the conduct of defendants'

*County of San Diego* v. *California Water etc. Co.* (1947) 30 Cal.2d 817, 822-823 [186 P.2d 124].)

The trial court nonetheless held that on the peculiar facts of this case defendants are estopped to deny proper abandonment because of the conduct of their predecessor in interest concerning Camp Kimtu Road.

In this regard, the court found: "The parties [plaintiffs and defendants' predecessor in interest] in dealing with members of the public and each other elected to treat it [Camp Kimtu Road] as if it were abandoned by each exercising exclusive dominion over that part of the old road which had crossed their respective properties; contracting with others for limited rights to cross and further entering into mutual contracts with the County and receiving consideration therefor; that no controversy existed between plaintiffs and predecessors in interest of defendants."

■ Since the continued legal existence of Camp Kimtu Road is admitted, it seems quite evident that plaintiffs have no legal right to construct gates across it or to in any other way impede the public's free right of passage over it.

■ In fact, the actions of plaintiffs in this regard, as well as those of defendants' predecessor in interest, constitute a public nuisance (Civ. Code, §§ 3479, 3480). Since the judgment in favor of plaintiffs actually assists them in maintaining this nuisance, it cannot stand.

■ Turning, then, to defendants' cross-complaint to enjoin plaintiffs from obstructing Camp Kimtu Road, the record at present is insufficient to determine whether they are entitled to the recovery sought. "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." (Civ. Code, § 3493.)

Defendants alleged: "The property of said cross-complainants abuts upon and lies on both sides of a certain public road or highway, which said public highway affords the sole and only means of ingress and egress to and from that portion of the property of said cross-complainants lying southeasterly of the South Fork of said Eel River."

This is certainly a sufficient allegation of special injury, and a finding in accord with it would allow defendants to sue individually for removal of obstructions on a public road.

predecessor in interest estopped defendants from denying proper abandonment. The trial court expressly declined to decide the abandonment issue.

(See *Cushing-Wetmore Co.* v. *Gray* (1907) 152 Cal. 118 [92 P. 70, 125 Am.St.Rep. 47] ; *McKinney* v. *Ruderman* (1962) 203 Cal.App.2d 109 [21 Cal.Rptr. 263].) The evidence on this issue, however, is conflicting.

The most difficult problem on retrial will be the determination of the exact boundaries of Camp Kimtu Road over plaintiffs' property. The existence and location of the road was pleaded generally and, in the absence of a demurrer, sufficiently apprised plaintiffs of the claim being made by defendants.

The burden of proof as to the boundaries of the road is clearly on the one asserting the existence of a right-of-way. In the instant case, defendants sought not only the removal of the fence on plaintiffs' eastern boundary, but also an injunction against any other interference with defendants' passage over the road.

In this regard, the instant case is similar to *Leverone* v. *Weakley* (1909) 155 Cal. 395, wherein the court held, at page 398 [101 P. 304] : ''It goes without saying that where it is sought to have it decreed that real property of a person is subject to a use or easement in favor of another, the property affected must be described in the pleadings with such certainty as to enable the party against whom the claim is made to definitely know exactly what portion of his property is so claimed, *and the judgment establishing the validity of the claim must be definite and certain as to the property affected.*'' (Italics added; see also, *Harrison* v. *Bouris* (1956) 139 Cal.App.2d 170 [293 P.2d 98].)

No doubt defendants are faced with an almost insurmountable task. On the record before this court, all that is shown with any degree of certainty are the two termini of the old road, namely, the ford on defendants' land and a point 250 feet westerly into plaintiffs' land. The rest of the dirt road has been washed out since 1938, and the evidence is conflicting whether the road rebuilt annually by West Coast follows the path of the old road.

A county highway official testified that the road is no longer shown on county road maps and that there is no recorded document showing the county's right-of-way. The only indication of any record is the reference of defendants' counsel to ''a map dated about 1889'' on cross-examination of this witness.

*Hitchcock* v. *Lovelace* (1941) 47 Cal.App.2d 818 [119 P.2d 151], and *Gray* v. *Magee* (1933) 133 Cal.App. 653 [24 P.2d

948], cited by defendants, do not hold that a right-of-way may be sufficiently described by its termini alone. In both of these cases, the road so described was shown to have a visible location on the ground. (See also *Guerra* v. *Packard* (1965). 236 Cal.App.2d 272, 296-297 [46 Cal.Rptr. 25].)

Such is obviously not true in the instant case, and so it will be incumbent upon defendants to prove with certainty where on the ground the public road was located in the past.

■ The final issue pertaining to defendants' right to recover on the cross-complaint is whether the conduct of defendants' predecessor in interest should estop defendants from abating the nuisance.

"No lapse of time can legalize a public nuisance, amounting to an actual obstruction of public right." (Civ. Code, § 3490.) Thus, it is clear that plaintiffs' obstruction of the county road may still be abated by action of the District Attorney of Humboldt County (Code Civ. Proc., § 731), subject of course to the same burden of proof regarding the location of the road as defendants must sustain.

■ In *Wade* v. *Campbell* (1962) 200 Cal.App.2d 54, 61 [19 Cal.Rptr. 173, 92 A.L.R.2d 966], it was held that the laches and the bar of the statute of limitations are unavailable as defenses to one sued by another to enjoin a public nuisance. There seems to be no reason to place the equitable defense of estoppel urged in the instant case on any better standing.

■ Moreover, the record herein is insufficient to prove an estoppel against defendants' predecessor in interest. The finding of the trial court to that effect (although for another purpose) is erroneous. An essential element of estoppel is that the party asserting it must be ignorant of the true facts. (*Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.* (1960) 54 Cal.2d 773 [8 Cal.Rptr. 448, 356 P.2d 192]; *Banco Mercantil* v. *Sauls Inc.* (1956) 140 Cal.App.2d 316 [295 P.2d 55]; *Safway Steel Products, Inc.* v. *Lefever* (1953) 117 Cal. App.2d 489 [256 P.2d 32].)

In order to prove this element, "it is necessary that the evidence show not only that the party claiming the estoppel did not have actual knowledge of the true facts but that he did not have notice of facts sufficient to put a reasonably prudent man upon inquiry, the pursuit of which would have led to actual knowledge; the convenient or ready means of acquiring knowledge being the equivalent of knowledge [citations]." (*Banco Mercantil* v. *Sauls Inc., supra,* at 323; see

also *Selinger* v. *Milly* (1942) 51 Cal.App.2d 286, 294 [124 P.2d 631].)

In the instant case, the record conclusively shows that plaintiffs were aware of the possible existence of a county road passing through their property south of the river. When plaintiffs purchased the property in 1939, their vendor told them that the county had agreed to abandon the old road on completion of the new. Plaintiffs admitted they could see the remnants of the road when they entered into possession.

No investigation was undertaken to determine the status of the road. Yet, examination of the records at the county recorder's office would have quickly revealed what was later discovered and admitted in this lawsuit, that the road was never legally abandoned.

There is no evidence that defendants' predecessor in interest represented to plaintiffs that the road had been abandoned. To the contrary, she, like plaintiffs, lacked any actual knowledge of the status of the road. Her cooperation with plaintiffs in dealing with others did not occur until after plaintiffs had enclosed their portion of the road.

Under these circumstances, there could be no estoppel against defendants' predecessor in interest, such as to bar defendants' individual action to enjoin the public nuisance. At best, defendants' predecessor was guilty of laches.

Lastly, even if defendants' predecessor in interest were somehow estopped to sue, this equitable defense would be good against defendants' predecessor only and personally. The nuisance as to defendants was freshly instituted when they purchased the property in 1962. (See de Funiak, Handbook of Modern Equity (1956) § 35, pp. 64-66.)

In summary, then, that portion of the judgment granting plaintiffs an injunction against use of what is admitted to be a public road must be reversed. On retrial, if it is found that defendants have suffered sufficient special injury to maintain an action to enjoin a public nuisance, then they will be entitled to have plaintiffs ordered to remove the gate at the eastern boundary of their property and to allow free passage over Camp Kimtu Road, providing defendants can prove its location with certainty. Correspondingly, plaintiffs will be entitled to prevent any intrusion on their property other than over the county road so established.

The final question raised by the parties concerns the power of the trial judge to vacate certain findings which were entered in the instant case in favor of defendants. (Code Civ. Proc., § 473.)

The trial court filed its memorandum opinion on September 10, 1964, in which it held that plaintiffs were entitled to an injunction on the ground that defendants were estopped to deny proper abandonment of Camp Kimtu Road.

Due to unavoidable emergencies, plaintiffs' counsel neglected to submit proposed findings of fact and conclusions of law for over three months. However, on December 21, 1964, defendants' counsel submitted, and the court signed, findings and conclusions to the effect that there was no estoppel and that defendants were entitled to the injunction sought in their cross-complaint. A judgment to this effect was signed on January 11, 1965. Both documents were filed.

On March 1, 1965, plaintiffs' counsel moved to vacate the above findings, conclusions, and judgment. In an opinion filed April 7, 1965, the trial court granted the motion, noting that defendants' findings did not conform to his decision, that they were apparently submitted as counterfindings, and that they were signed inadvertently.

Under Code of Civil Procedure section 473, the trial court has the power to vacate findings or a judgment signed by mistake and contrary to the decision he intended to render. (See 3 Witkin, Cal. Procedure (1954) Judgment, § 21, p. 1900.) The record in the instant case amply supports the conclusion that defendants' proposed findings, which were diametrically opposed to the memorandum opinion, were signed inadvertently.

Moreover, even if defendants' findings were accepted as the final determination of the case, they could not stand. As seen above, to recover on the cross-complaint, defendants must prove with certainty the location of the road. Defendants' proposed findings merely recite that a public road passes through certain described property owned by plaintiffs. Such recital is patently inadequate to support defendants' right to pass through plaintiffs' property.

Judgment reversed and cause remanded for further proceedings consistent with the conclusions reached herein.

Shoemaker, P. J., and Taylor, J., concurred.