[Civ. No. 24720. First Dist., Div. One. July 29, 1968.]

CITY OF BERKELEY, Plaintiff and Appellant, v. CHARLES F. GORDON et al., Defendants and Respondents.

Robert T. Anderson, City Attorney, and Robert P. Berkman, Assistant City Attorney, for Plaintiff and Appellant.

Knapp, Gill, Hibbert & Stevens, Joseph C. Gill, Breed, Robinson & Stewart, Anthony J. Pagano and Ned Robinson for Defendants and Respondents.

MOLINARI, P. J.—Plaintiff, the City of Berkeley, appeals from a judgment denying it a mandatory injunction sought

by it against defendants to compel removal, at defendants' expense, of a portion of a basement that extends under a public street and that interferes with a proposed reconstruction and beautification project under way in that street.

## The Record

The facts are undisputed. University Avenue is a public street in the City of Berkeley running in an east-west direction, is of great importance and is constantly used by numerous vehicles and pedestrians. Defendants Gordon, Bell, and Merritt are the owners in trust and defendant Grodin is the lessee of the property situated at the southeast corner of the intersection of University Avenue and East Shattuck Avenue. The property is improved by a commercial building constructed approximately 65 years ago; the basement of this building extends northerly beyond the building under University Avenue for about 16 feet, which is the width of the sidewalk at that location.

Plaintiff has commenced the reconstruction of University Avenue. The plans call for narrowing the sidewalk abutting defendants' property from 16 to 14 feet and putting three street trees and a street light in the reduced sidewalk area. In order to carry out these plans, it will be necessary to remove the existing north wall of the basement of defendants' building, to build a new north wall behind the proposed construction area, to do other necessary work to protect the structural integrity of the building, and to back-fill and grade the area north of the new wall, where a new curb and gutter and part of a new sidewalk will be constructed. The cost of this work is estimated at $15,000. Plaintiff has notified all defendants to remove that portion of the basement underneath the sidewalk area where the City wishes to renovate, and defendants have refused to undertake the proposed work but have offered the City possession so that it may undertake the construction. Defendants do not dispute plaintiff's paramount right to use the subsurface area of the street for the proposed reconstruction. Defendants Gordon, Merritt and Bell have requested defendant Grodin, the lessee, to assume whatever legal responsibilities are due to the City, and Grodin has rejected that demand.

The trial court found that plaintiff's right to the use and enjoyment of the subsurface of the sidewalk area is paramount to any rights of defendants, but found that the existence of the basement under the sidewalk did not constitute a public nuisance within the meaning of Civil Code section

3479. Accordingly, the court concluded that plaintiff may proceed with its proposed construction work at any time and that plaintiff has a plain, speedy and adequate remedy at law in that money damages will adequately compensate it in an action to recover its costs of reconstruction.[1]

## May Plaintiff Compel Removal of Defendants' Basement From Underneath the Sidewalk of University Avenue?

*Yes.* Defendants do not dispute plaintiff's paramount right to use the subsurface of University Avenue for its proposed project,[2] nor do they contend that the project is not a reasonable street use.[3] Defendants argue in support of the judgment, however, that plaintiff has not established its claim to the street, since no documents of title were introduced in evidence and since it is presumed that defendants as abutting owners own to the center of the street. (Civ. Code, §§ 831, 1112.) The state of the title, however, is immaterial since it is conceded that University Avenue is a public street. Moreover, this contention appears to be inconsistent with the offer made to plaintiff that it may enter upon defendants' property and undertake the construction.

Defendants, referring to the fact that the basement has been in is present place for over 50 years, apparently intimate that they have established prescriptive title to the occupied area. If such is their contention, it has no merit. Civil Code section 1007 and numerous cases decided thereunder establish that adverse title by prescription cannot be gained against a city or other public body on land that is

[1] It was stipulated that defendants are well able to respond in damages should plaintiff receive judgment therefor.

[2] The rule is that a city has the right to use the subsurface of a dedicated street for proper street purposes, and this right is paramount to the rights of abutting owners regardless of whether they own the fee to the center of the street or not. (*Hayes* v. *Handley,* 182 Cal. 273, 281-284 [187 P. 952]; *Fallon* v. *City & County of San Francisco,* 44 Cal. App.2d 404 [112 P.2d 718]; see also *Randall* v. *City of Milwaukee,* 212 Wis. 374 [249 N.W. 73, 74-75]; *Peabody* v. *City of Boston,* 220 Mass. 376 [107 N.E. 952, 953, L.R.A. 1915F 1005]; *Appleton* v. *City of New York,* 219 N.Y. 150 [114 N.E. 73, 78]; 25 Am.Jur., Highways, § 157, p. 453.)

[3] It is the rule in this state that the city has the right from time to time to change the uses of its streets as will be most conducive to the public interest. (*Hayes* v. *Handley, supra,* at pp. 281-282; *Wattson* v. *Eldridge,* 207 Cal. 314, 321 [278 P. 236]; *Faus* v. *City of Los Angeles,* 67 Cal.2d 350, 357 [62 Cal.Rptr. 193, 431 P.2d 948]; *Colegrove Water Co.* v. *City of Hollywood,* 151 Cal. 425, 429-430 [90 P. 1053]; *City & County of San Francisco* v. *Grote,* 120 Cal. 59, 61 [52 P. 127]; *Fallon* v. *City & County of San Francisco, supra;* see *County of Santa Barbara* v. *More,* 175 Cal. 6, 12 [164 P. 895] as to aesthetic motive; and see also Note, 11 A.L.R.2d 180, 184.

dedicated for a public use. (E.g., *City of Los Angeles* v. *Forrester*, 12 Cal.App.2d 146, 149 [55 P.2d 277]; *Martin* v. *City of Stockton*, 39 Cal.App. 552, 557 [179 P. 894]; *People* v. *Pope*, 53 Cal. 437, 451 [no right to obstruct a street can be acquired by adverse possession]; *Guerra* v. *Packard*, 236 Cal. App.2d 272, 284 [46 Cal.Rptr. 25].) ▮▮ Similarly, the public body cannot grant a permit for a permanent encroachment on dedicated public land. (*County of El Dorado* v. *Al Tahoe Investment Co.*, 175 Cal.App.2d 407, 411 [346 P.2d 205]; *Strong* v. *Sullivan*, 180 Cal. 331, 334 [181 P. 59, 4 A.L.R. 343]; *Western States etc. Co.* v. *Bayside Lbr. Co.*, 182 Cal. 140, 144-145 [187 P. 735]; see 25 Cal.Jur.2d, Highways, § 199, p. 67.)

### Is the Encroachment a Public Nuisance?

*No.* The Penal Code (§ 370) and the Civil Code (§ 3479) both define a nuisance as follows: "Anything which . . . unlawfully obstructs the free passage or use, in the customary manner, of any . . . public park, square, street, or highway, is a nuisance." (Civ. Code, § 3479.) ▮▮ The test of a nuisance under these statutes is whether the structure in question unlawfully obstructs free passage of the public street or use of the street in the customary manner. (*Elm* v. *McKee*, 139 Cal.App.2d 353, 361 [293 P.2d 827]; see *Bright* v. *East Side Mosquito etc. Dist.*, 168 Cal.App.2d 7, 10 [335 P.2d 527].)

All the reported cases under the foregoing statutes hold to be nuisances only actual obstructions of traffic (*Tucker* v. *Watkins*, 251 Cal.App.2d 327, 331 [59 Cal.Rptr. 453] [gate or barrier across a road]); surface or overhanging structures on a public way (*People* v. *Henderson*, 85 Cal.App.2d 653, 656-657 [194 P.2d 91] [shed on unpaved portion of public roadway]); *Curtis* v. *Kastner*, 220 Cal. 185, 188 [30 P.2d 26] [eaves and rafters projecting into alley five to six feet above ground]); structures that are illegal in that they encroach upon a street or road without required permission (*Laura Vincent Co.* v. *City of Selma*, 43 Cal.App.2d 473, 476-477 [111 P.2d 17] [awnings erected over sidewalks without required permit are a public nuisance whether or not they materially interfere with public travel]); or other encroachments that actually interfere with or obstruct traffic (*City & County of San Francisco* v. *Buckman*, 111 Cal. 25, 30 [43 P. 396] [grading of a street, obstructing passage]; *Bright* v. *East Side Mosquito etc. Dist.*, *supra*, 168 Cal.App.2d 7, 10-11 [thick chemical fog]). None of the foregoing cases hold that a sub-

surface structure that does not interfere with the public's use of the street is a nuisance.

In other jurisdictions the rule is that constructions under sidewalks, such as cellars and vaults, are not nuisances per se if constructed with the express or implied permission of the municipality. (*Tiernan* v. *Thorp*, 88 Neb. 662 [130 N.W. 280, 281-282, 32 L.R.A. N.S. 1034]; *King* v. *Thompson*, 87 Pa. 365 [30 Am.Rep. 364, 365]; *Johnston* v. *Charleston*, 3 S.C. 232 [16 Am.Rep. 721, 726-727]; *Moore* v. *Winnig*, 145 Kan. 687 [66 P.2d 372, 373]; *Blais* v. *American Grocery Co.*, 129 N.J.Law 274 [29 A.2d 317, 318-319].)[4] The underlying rule is that an abutting owner generally has the right to construct areaways, cellars, and vaults under the street provided that he does not thereby interfere with the public easement. (*Sears* v. *City of Chicago*, 247 Ill. 204 [93 N.E. 158, 161, 139 Am.St.Rep. 319, 20 Ann.Cas. 539].) ▮ This rule is but an application of the general principal recognized in California that the abutting owner who owns to the center of the street may exercise any and all rights of dominion over his interest as are not inconsistent with the public easement in the street. (*Colegrove W. Co.* v. *City of Hollywood, supra,* 151 Cal. 425, 429; *Gurnsey* v. *Northern Cal. Power Co.*, 160 Cal. 699, 705 [117 P. 906]; *County of Santa Barbara* v. *More, supra,* 175 Cal. 6, 10.)

▮ Although defendants cannot gain prescriptive title to the subsurface of University Avenue by virtue of over 50 years' possession thereof, such long continued use with the acquiescence of the municipality is a strong basis for the inference that the City consented to the basement's presence. (See *Babbage* v. *Powers*, 130 N.Y. 281 [29 N.E. 132, 136, 14 L.R.A. 398] [nine years' possession].) There is no evidence, moreover, that the encroachment of the basement poses any danger to passers-by or users of the streets in general or that it is illegal. Thus this case is distinguishable from cases relied upon by plaintiff such as *Boise City* v. *Sinsel*, 72 Idaho 329 [241 P.2d 173, 178-179], where the nuisance was a traffic hazard, or *Tucker* v. *Watkins, supra,* 251 Cal.App.2d 327, where the nuisance was an illegal gate across a highway and it was said that mere lapse of time could not legalize its presence. (P. 333.)[5]

---

[4]See 25 Am.Jur., Highways, section 281, pages 574-575; 31 A.L.R.2d 1334, 1352.

[5]As to the illegality of encroachments on state and county highways, see Streets and Highways Code sections 724, 1481.

In the present case the city authorities had not determined that the subject basement constituted an obstruction to the sidewalk or street. Such a determination by regulation or ordinance would be conclusive and not open to question by the courts in the absence of fraud, oppression, or manifest abuse of discretion. (*Laura Vincent Co.* v. *City of Selma, supra,* 43 Cal.App.2d 473, 476.) Here, since no such determination was made, the general principle applies that whether or not a given condition constitutes a nuisance is a question of fact to be determined by the trier of fact. (*Blanc* v. *Klumpke,* 29 Cal. 156, 159; *City of San Francisco* v. *Clark,* 1 Cal. 386, 387; *Gunter* v. *Geary,* 1 Cal. 462, 467.) Here the court determined that defendants' basement did not constitute a nuisance, and its decision is in accord with both the factual showing in this case and the settled law in this and other jurisdictions. Indeed, it would be a harsh result if after having maintained this basement for some 65 years without the municipality's complaining of its presence, defendants were now to find that their basement was a nuisance per se and that they, therefore, were criminally liable for a misdemeanor (Pen. Code, §§ 370, 372) as well as liable to have the encroachment abated under Civil Code section 3491.

We conclude, therefore, that although plaintiff has the paramount right to use the subsurface area of the street for its renovation project, that fact per se does not establish that defendants' encroaching basement is a public nuisance. Since it is neither illegal nor an actual obstruction to pedestrian and vehicular traffic, the determination as to whether the basement was a nuisance was one of fact for the trial court.

### Did the Trial Court Err in Denying Plaintiff Injunctive Relief?

*No.* Plaintiff contends that it was incumbent upon the trial court to grant injunctive relief. This contention is untenable because the subject encroachment is not a nuisance. We note, moreover, that none of the authorities cited by plaintiff stand for the proposition that an injunction must issue in all nuisance cases, but hold, rather, that injunctive relief is *permissible* in such cases regardless of the availability of other remedies. (See, e.g., *City & County of San Francisco* v. *Buckman, supra,* 111 Cal. 25, 30-31; *Boise City* v. *Sinsel, supra,* 241 P.2d 173, 178; see also *People* v. *Stafford Packing Co.,* 193 Cal. 719, 728 [227 P. 485]; *Randall* v. *Freed,* 154 Cal. 299, 302 [97 P. 669]; 10 McQuillin, Municipal Corporations

468

(1966 rev. ed.) pp. 896-899; 36 Cal.Jur.2d, Nuisances, §§ 51, 77.)

In California, one remedy available to plaintiff to remove an encroachment is self-help followed by an action against the owner of the encroachment for the reasonable costs of its removal. (See, e.g., *People* ex rel. *Dept. of Public Works* v. *Henry*, 193 Cal.App.2d 476 [14 Cal.Rptr. 456], an action to recover the costs of moving the defendant's wrongfully installed water main from a county highway.) In *Airways Water Co.* v. *County of Los Angeles*, 106 Cal.App.2d 787 [236 P.2d 199], on which plaintiff relies, the plaintiff utility had already relocated its water mains pursuant to county orders and then sought reimbursement from the county, which the court denied on the ground that the company must pay the cost of relocation itself. In *Fallon* v. *City & County of San Francisco, supra,* 44 Cal.App.2d 404, it was held that the reduction in width of the sidewalk of Market Street, necessitating setting back the plaintiff's basement, was not a taking. In that case nothing was said about who should do the setting back. Plaintiff here has cited no case except *Boise City* v. *Sinsel, supra,* 241 P.2d 173, that granted a mandatory injunction against the owner of the encroachment, forcing him to take the initiative in its removal. As already noted, *Boise* involved a traffic hazard. Moreover, although the court there ordered that an injunction issue to abate the public nuisance, that case does not hold that an injunction is mandatory in all cases.

In the light of the foregoing, the granting of an injunction in the instant case was, at best, a permissible remedy. Accordingly, the trial court had discretion to refuse injunctive relief. Further, it does not appear to have abused its discretion. The record indicates that the construction work required may be quite complicated, and that plaintiff is in a better position, than defendants, in view of the nature of the work, to have it done and to supervise it. Further, once the work is completed it will be easier to ascertain what the reasonable costs of removal of the encroachment are in an action for such costs against defendants. In such an action the court may be in a position to apportion the costs as between those expenses strictly attributable to the presence of the encroachment (such as setting back the wall) and those which may really be a part of the reconstruction work on the street and which should therefore be borne by plaintiff (as possibly the compacting and grading necessary to construct the gutter, curb and part of a new sidewalk). It seems manifestly unfair to place on

defendants, or any of them, the burden not only of paying for
the removal but also of initiating and supervising it and also
possibly undertaking, incidentally, some of the work that
should be done by plaintiff. Also, the supervision of a manda-
tory injunction might be quite burdensome in this case. For
these reasons among others, no doubt, the trial court con-
cluded that this was not a proper case for injunctive relief
and, therefore, left plaintiff to its remedy of self-help fol-
lowed by an action for costs. This remedy is adequate since
defendants have stipulated that they will permit plaintiff to
undertake removal of the encroachment, and since they are
able to respond in damages.

*Liabilities of Separate Defendants for Costs of Removal*

Although the lease between the parties was received in evi-
dence and the issue of defendants' respective liabilities was
apparently tendered to the court, since the court had before it
the question as to against whom the injunction should issue if
an injunction were ordered, the record is clear that once the
court determined that an injunction would not issue it
deemed it unnecessary to determine whether all the defend-
ants or only some of them are liable for the costs of removing
the encroachment. No findings, conclusions of law or judg-
ment touching upon the respective liabilities of defendants
were made by the trial court, nor does it appear from the
record that such findings or determination were requested by
defendants. It is apparent that this matter has been reserved
for future determination since it is dependent upon such fac-
tors as whether the encroachment is in fact removed, and if it
is removed, the amount of the costs and the apportionment of
such costs to those expenses strictly attributable to the pres-
ence of the encroachment. Accordingly, we need not here dis-
cuss the liabilities of defendants as between themselves.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court
was denied September 25, 1968.