[Civ. No. 6498. Fourth Dist. Feb. 6, 1962.]

CITY OF IMPERIAL BEACH, Plaintiff and Appellant, v. PAUL ALGERT, Defendant and Respondent.

John F. O'Laughlin, City Attorney, for Plaintiff and Appellant.

Swing, Scharnikow & Lewis and Bernard L. Lewis for Defendant and Respondent.

SHEPARD, J.—This is an appeal by plaintiff, the City of Imperial Beach, hereinafter called City, from a judgment

in favor of defendant, Paul Algert, hereinafter called Algert, in a dispute over ownership of an 80-foot by 140-foot parcel of land.

FACTS

The evidence is without substantial conflict. On January 20, 1948, a subdivision map for South Coronado Manor, map No. 2450, was filed for approval with the Board of Supervisors of San Diego County. It was approved by them. Among the streets delineated on this map was one called Delaware. The portion thereof with which we are here concerned was 80 feet wide, starting at the southerly line of Elm Avenue and proceeding into that block between Lots 89 and 90, a distance of 140 feet back to an alley. It was never actually opened for any street purposes and the board of supervisors never authorized any improvement thereof nor any expenditure thereon for street purposes. A full concrete curb was constructed by the subdivider across the front of this parcel along the regular curb line of Elm Avenue; said curb has remained continuously in place ever since. On August 30, 1948, said board made its formal order closing the street to traffic and thereafter caused taxes to be levied against said parcel as private property. October 27, 1949, said board ordered the formation of the Imperial Beach Sanitary District. In accordance with the Improvement Acts of 1911 and 1921, the board ordered assessments levied upon the lands within the district and designated the parcel in question as one against which a separate assessment was made. In the assessment order it was described as ''80 foot closed adjacent easterly to Lot 89, South Coronado Manor.''

The assessment payment became delinquent and the county treasurer at public auction on March 30, 1956, sold the parcel to Algert, issuing to him his certificate of sale, and on May 1, 1957, issued Algert a deed thereto.

In the meantime, in July 1956, City was incorporated and the parcel became a part of City. The official map of the City never showed the parcel as a street. It was by city ordinance later zoned as residential property. Some time after the sale to Algert of the parcel the board of supervisors, without notice to Algert, made an order purporting to vacate its previous order of August 30, 1948. Whether or not this was done before or after the incorporation of the city is not made clear by the record because the stipulations of fact entered into by the parties and the exhibits received in evidence were not included in the record brought to this court. At any rate, no

notice was given of this to Algert and he did not discover it until some time after he received his deed from the county treasurer. The evidence does not show that any tender or offer of refund of the purchase money paid by Algert was ever made to him.

By its complaint City sought to quiet title against Algert and adjacent lot owners. Adjacent lot owners were served with processes but either disclaimed or defaulted and the action was tried with City and Algert as the only contestant parties. The trial court concluded that City is estopped by actions of itself and those of the county, its predecessor in interest, from asserting that the parcel in question is a public street. It rendered judgment for Algert. City appeals.

## NONUSER

That a county or city will not lose its right to a duly dedicated public street by mere nonuser has been clearly established by constantly uniform authority. (*People* v. *Myring*, 144 Cal. 351, 354 [6] [77 P. 975]; *Wheeler* v. *City of Oakland*, 35 Cal.App. 671, 675 [3] [170 P. 864]; *Humboldt County* v. *Van Duzer*, 48 Cal.App. 640, 644 [3] [192 P. 192].) Abandonment of a street must be accomplished in the manner provided by statute since streets are in law the property of all the people of the state. (*Keller* v. *City of Oakland*, 54 Cal.App. 169, 172 [2] [201 P. 618]; *County of San Diego* v. *California Water etc. Co.*, 30 Cal.2d 817, 823 [2] [186 P.2d 124, 175 A.L.R. 747].) Title by adverse possession of portions of a public street cannot be gained by lapse of time. (*Nerio* v. *Maestretti*, 154 Cal. 580 [98 P. 860]; *Humboldt County* v. *Van Duzer, supra*, 644 [3]; *Richert* v. *City of San Diego*, 109 Cal.App. 548, 553 [4] [293 P. 673]; *Henry Cowell Lime & Cement Co.* v. *State*, 18 Cal.2d 169, 172 [2] [114 P.2d 331]; *City of Oakland* v. *Burns*, 46 Cal.2d 401, 406 [296 P.2d 338].) Mere omission of a street from an official map does not of itself operate as an abandonment. (*Eureka* v. *Gates*, 137 Cal. 89, 94 [2] [69 P. 850].) The levy of taxes on a whole tract does not necessarily negate the existence of an easement over a portion thereof. (*Schwerdtle* v. *County of Placer*, 108 Cal. 589, 596 [41 P. 448]; *Ernst* v. *Tiel*, 51 Cal.App. 747, 751 [4] [197 P. 809].)

## ESTOPPEL

However, the trial court's judgment was not grounded on loss by nonuser nor on adverse possession. Plaintiff brought a suit in equity and denominated its action as one for declara-

tory relief, but its prayer sought a declaration quieting its title as against Algert. The rules of equitable estoppel are clearly available if the facts warrant.

 The courts of this state have been careful to apply the rules of estoppel against a public agency only in those special cases where the interests of justice clearly require it. (*Sacramento* v. *Clunie*, 120 Cal. 29, 30 [1] [52 P. 44]; *County of San Diego* v. *California Water etc. Co., supra,* pp. 825, 826 [4-6].) However, if such exceptional case does arise and if the ends of justice clearly demand it, estoppel can and will be applied even against a public agency. Of course, the facts upon which such an estoppel must rest go beyond the ordinary principles of estoppel and each case must be examined carefully and rigidly to be sure that a precedent is not established through which, by favoritism or otherwise, the public interest may be mulcted or public policy defeated. (*County of Los Angeles* v. *Cline,* 185 Cal. 299, 306 [9] [197 P. 67]; *Contra Costa Water Co.* v. *Breed,* 139 Cal. 432, 440, 441 [4] [73 P. 189]; *City of Los Angeles* v. *Cohn,* 101 Cal. 373, 376 [35 P. 1002]; *Fresno* v. *Fresno Canal & Irr. Co.,* 98 Cal. 179 [32 P. 943]; *People* v. *Gustafson,* 53 Cal.App.2d 230, 242 [8] [127 P.2d 627]; *County of San Diego* v. *California Water etc. Co., supra,* 30 Cal.2d 817; *City of Los Angeles* v. *County of Los Angeles,* 9 Cal.2d 624, 630 [6] [72 P.2d 138, 113 A.L.R. 370]; *McGee* v. *City of Los Angeles,* 6 Cal.2d 390, 394 [57 P.2d 925]; *Times-Mirror Co.* v. *Superior Court,* 3 Cal.2d 309, 331 [3] [44 P.2d 547].)

The question here, then, is whether or not the facts of the case at bar present that special combination of circumstances which clearly demand the application of the principles of estoppel in order that justice may be served. We are not here confronted with a ''bare promise to abandon,'' as in *County of San Diego* v. *California Water etc. Co., supra,* nor mere nonuser as discussed in *People* v. *Myring;* nor an attempt to gain title by adverse possession as related in *Nerio* v. *Maestretti, supra,* nor a mere omission from the official city map, as pointed out in *Eureka* v. *Gates, supra;* nor a mere levy of taxes as in *Schwerdtle* v. *County of Placer, supra,* and other cases cited above. There is no indication whatever of the possibility of favoritism or collusion.

 What we do have is a bare dedication by map, with every other act of county and city over a period of many years indicating a clear affirmative rejection of its acceptance as a street. The affirmative uncontradicted evidence shows that

the parcel in question was never used at any time during the 12 years from the time of original map dedication to the time of trial, for any road or traffic purpose of any kind, either vehicular or pedestrian. No public money was ever expended on it for road purposes up to the time of its sale to Algert nor at any other time. Every affirmative act of the county and city indicated an intention not to use it for street purposes. Permanent concrete curbs were installed by the subdivider, under county authority, to block it off physically from traffic use. The county levied ordinary taxes on it as a privately owned parcel. It retained at all times to the eye of any prospective purchaser all the appearance of a private residential lot. It was zoned by City for private residential purposes. The City's official map showed it as a residential lot. It was assessed for improvement district purposes by authority of the board of supervisors as a privately owned lot. Neither adjacent owners nor any other owners displayed any interest in having it opened as a street, nor in any possible reversionary interest. Indirectly all the owners within the improvement district received the benefit of Algert's purchase money. The county, through its official agent, the county treasurer, advertised it for sale at public auction as private property. No one ever suggested to the treasurer that he ought not to issue the deed. No one, even after the full facts were known to all, ever suggested that a mistake had been made and that because thereof Algert's money should be refunded. Even the evidence of the City's present desire to use the property for street purposes presents some contradictions respecting connecting street widths at the point in question that have raised arguments as to the City's true intent.

We are not prepared to say what portion of this total chain of events, if missing, would vitiate the use of equitable estoppel. What we do hold is that the sum total of all the facts actually here presented convinces us, as it did the trial judge, that this case presents one of those exceptional conditions in which estoppel against a governmental agency is justified and should be applied.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied March 6, 1962, and appellant's petition for a hearing by the Supreme Court was denied April 3, 1962.