[No. D026338. Fourth Dist., Div. One. Oct. 10, 1997.]

JACK D. SCOTT et al., Plaintiffs and Appellants, v.
CITY OF DEL MAR, Defendant and Respondent.

**COUNSEL**

Marcus E. Crahan, Jr., for Plaintiffs and Appellants.

Worden, Williams, Richmond & Ellis and Tracy R. Richmond for Defendant and Respondent.

**OPINION**

**KREMER, P. J.**—In this inverse condemnation action, Jack D. and Angela Adams Scott, as trustees of the Angela Adams Scott trust (together Scott), and Edwin C. Lynch, as trustee under trust agreement dated May 25, 1988, appeal a judgment entered in favor of the City of Del Mar (Del Mar) after the trial court determined Del Mar's removal of their seawalls, riprap and patios encroaching on the public beach was not compensable under constitutional takings principles. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Scott and Lynch own neighboring oceanfront homes between 23d and 24th Streets in Del Mar which when purchased had wooden seawalls with riprap in front of the walls and private patios between the walls and homes. The seawalls, built in 1928 (Lynch) and 1946 (Scott), were not on the

residential lots but between 15 and 16 feet seaward of the westerly lot lines on public beach.

After storms in 1983 damaged the seawalls, Scott and Lynch's predecessor in interest made repairs. Del Mar sent Scott a notice the seawall, along with a new windbreak and stairs to the beach, were located 15 feet 10 inches west of the property line and would have to be removed within 10 days unless permits were obtained. Scott invited Del Mar to send him the necessary paperwork but it did not respond. Del Mar sent Lynch's predecessor in interest a similar letter, advising the seawall, new decking and stairs to the beach were 16 feet west of the property line.

In 1988 Del Mar adopted the Beach Overlay Zone by the initiative process, enacted as chapter 30.50 of the Del Mar Municipal Code, to "protect public access to and along the shoreline, while promoting public safety, health and welfare, and providing for the protection of private property." (Del Mar Mun. Code, § 30.50.010.) The ordinance prohibits seawalls and other structures west of the shoreline protection area line, which runs north to south along the coast and generally coincides with the westerly property lines of oceanfront lots. Property west of the shoreline protection area line is in the shoreline protection area. The ordinance requires removal of preexisting nonconforming structures, but a shoreline protection permit is available under certain circumstances for a seawall up to five feet west of the shoreline protection area line. (Del Mar Mun. Code, §§ 30.50.040A, 30.50.100 & 30.50.060G.)

In October 1988 Del Mar sent Scott and Lynch notices their improvements encroached on the shoreline protection area, and an administrative hearing would be scheduled to determine an abatement period. Del Mar advised Scott and Lynch that if they disagreed with its determination, they should submit survey information showing their property lines, the existing development, the shoreline protection area line and the distance five feet west of that line. Further, Del Mar advised it would continue the hearing if Scott or Lynch wished to apply for a shoreline protection permit.

Having received no response, on March 13, 1992, Del Mar sent Scott and Lynch certified notices of an April 6, 1992, administrative hearing to consider staff's recommendation they be ordered, at their own expense, to remove the noncomplying structures. The notices informed of the right to present evidence and warned: "In any further legal proceedings concerning this subject matter you may be limited to the evidence and issues raised at this hearing."

Jack D. Scott, an attorney, appeared at the hearing on his and Lynch's behalf. He did not, however, present any evidence. After staff's presentation,

Del Mar adopted resolution Nos. 92-39 and 92-40, declaring the Lynch and Scott improvements to be encroachments extending into the shoreline protection area, which deny public access to the beach and adversely impact "shore processes." Del Mar ordered abatement of the nonconforming improvements by May 15, 1992. Lynch and Scott removed their brick patios, but not the seawalls and riprap. Over their objections, Del Mar removed them in late May 1992. Scott and Lynch did not apply for shoreline protection permits to build seawalls closer to their homes.

In April 1993 Scott and Lynch sued Del Mar in inverse condemnation, alleging they were entitled to compensation for the property taken for public beach, the improvements and increased vulnerability of their homes to storms, vandalism and burglary. In a bench trial on the issue of liability[1], the court determined there was no taking of the underlying property because the subdivider dedicated it to public use in 1912. The court also determined there was no taking of the improvements as Del Mar had the power to declare them public nuisances and to abate them; because Scott and Lynch failed to pursue a mandamus action challenging Del Mar's nuisance finding, the court was bound by that finding. Lastly, the court determined there was no entitlement to diminution in value caused by removal of the improvements because Scott and Lynch failed to mitigate damages by obtaining permits for protective seawalls in conformance with the beach overlay zone.

On appeal, Scott and Lynch contend there is insufficient evidence the property in question was dedicated to public use, and alternatively, any public right was abandoned. They further contend the trial court erred in relying upon Del Mar's nuisance finding and in imposing an unreasonable mitigation requirement.

I

DISCUSSION

A. *Inverse Condemnation*

"Both eminent domain proceedings and inverse condemnation actions implement the constitutional rule that private property may not be 'taken' (U.S. Const., 5th Amend.) or 'taken or damaged' (Cal. Const., art. I, § 19) for public use without just compensation. When a public entity exercises its power of eminent domain to condemn private property, there is

---

[1]"[A]n action for inverse condemnation is a two-step proceeding in which the trial court first sits as the trier of law and fact and determines whether the plaintiff has suffered a 'taking.' [Citation.]" (*Rossco Holdings Inc.* v. *State of California* (1989) 212 Cal.App.3d 642, 659 [260 Cal.Rptr. 736].)

ordinarily no question that it has 'taken or damaged' that property. But the same is not true of inverse condemnation: 'While, in eminent domain litigation, the focus is usually limited to the amount of compensation owed the property owner under the "just compensation" clause, in an inverse condemnation action, the property owner must first clear the hurdle of establishing that the public entity has, in fact, taken [or damaged] his or her property before he or she can reach the issue of "just compensation." ' [Citation.]" (*San Diego Gas & Electric Co.* v. *Superior Court* (1996) 13 Cal.4th 893, 939-940 [55 Cal.Rptr.2d 724, 920 P.2d 669].)

"A public entity 'takes or damages' private property when it causes physical damage to that property without physically invading it. (E.g., *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296 . . . [withdrawal of lateral support caused by excavation of adjacent street]; *Reardon* v. *San Francisco* (1885) 66 Cal. 492 . . . [converse: damage from increased lateral pressure caused by filling of adjacent street].) . . . [¶] A public entity also 'takes or damages' private property when it physically invades that property in any tangible manner. (E.g., *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250 . . . [landslide]; *Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276 . . . [floodwaters].)" (*San Diego Gas & Electric Co.* v. *Superior Court, supra,* 13 Cal.4th at p. 940.) Inverse condemnation also lies where the government's conduct "results in an intangible intrusion onto the plaintiff's property that does not physically damage the property," if the "intrusion has resulted in a burden on the property that is direct, substantial, and peculiar to the property itself." (*Ibid.,* citing *Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 298 [142 Cal.Rptr. 429, 572 P.2d 43] [offensive odors emanating from sewage plant, rendering nearby home uninhabitable].)

### B. *Failure of Proof re Compensable Taking or Damaging*

#### 1. *Land Underlying Improvements*

The first question is whether the trial court correctly determined the land underlying the improvements Del Mar removed was public land.[2] A statutory dedication is effected when, in compliance with the map act then in force, an offer of dedication is accepted by the public agency. (*Galeb* v. *Cupertino Sanitary Dist.* (1964) 227 Cal.App.2d 294, 301 [38 Cal.Rptr. 580].) Map 1450 of Del Mar Subdivision No. 3 depicts block Nos. 124 through 127, between 21st and 24th Streets, which run east to west; each

---

[2]We must uphold the trial court's ruling if it is supported by substantial evidence, meaning that which is "reasonable in nature, credible, and of solid value . . . ." (*Beck Development Co.* v. *Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204 [52 Cal.Rptr.2d 518].)

block contains residential lots, numbered 1 through 18.[3] A 15-foot-wide area designated "Public Sidewalk" runs north to south through the development, intersecting each block between lots 8, 9, 10 and 11 to the west, and 6, 7, 12 and 13 to the east.[4] The map contains South Coast Land Company's offer to "dedicate to the public use all public Highways shown on this map within this subdivision." The county accepted and recorded the dedication in June 1912.

Scott and Lynch assert "all public Highways" would exclude the Public Sidewalk. "Highway," however, was used at the relevant time to denote a variety of public rights-of-way. "Section 2618 of the Political Code as reenacted in 1883, and which was in force until 1935, declared the law with respect to what constituted public highways and antedated the earliest travel over the route by vehicle. As reenacted it read as follows: 'In all counties of this state public highways are roads, streets, alleys, lanes, courts, places, trails, and bridges . . . .'" (*Ball* v. *Stephens* (1945) 68 Cal.App.2d 843, 846 [158 P.2d 207].) Sidewalks were specifically included within the definition of streets (*Heath* v. *Manson* (1905) 147 Cal. 694, 698 [82 P. 331]; *Short Line Associates* v. *City and County of San Francisco* (1978) 78 Cal.App.3d 50, 56 [143 Cal.Rptr. 921]), and as noted, streets and highways were used synonymously. Map 1450 contained no "highways," but "pikes," or streets, and the Public Sidewalk. The reference to "highways" thus necessarily includes all public rights-of-way or the dedication offer would be meaningless.

Further, controlling at map 1450's recordation was the 1907 subdivision act, which required the subdivider to record a map describing: "First: All parcels of ground . . . offered for dedication for public uses, whether they be intended for public highways, parks, courts, commons or other public uses, and their dimensions and boundaries and the courses of their boundary lines.

"Second: All lots intended for sale, or reserved for private purposes and not offered for dedication to the public use, *either by number or letter*, and their dimensions and boundaries and the courses of their boundary lines. All parcels of land offered for dedication as public highways and not accepted by the proper authorities . . . , shall also be designated by number or letter." (Stats. 1907, ch. 231, § 1, p. 290, italics added.) The Public Sidewalk was not designated by number or letter, as required if reserved for private use.

---

[3]Scott and Lynch own lots 12 and 13, respectively, of block No. 126.

[4]The developer later gave the westerly four lots of each block to the Del Mar Civic Association, to provide public access to the beach. The association has since deeded the land to Del Mar. (See *Barrie* v. *California Coastal Com.* (1987) 196 Cal.App.3d 8, 22, fn. 3 [241 Cal.Rptr. 477].)

The sidewalk's dimensions, 15 feet by about 1,000 feet, further indicate an intended use as a public thoroughfare. "[T]here is a strong intimation of an intention on the part of the owner to offer to the public for use as a street or alley an unnumbered or unlettered parcel of ground that did not conform in either shape or dimensions to any of the lots or blocks delineated." (*Gross v. City of San Diego* (1932) 125 Cal.App. 238, 244 [13 P.2d 820].) This is particularly true where the only means of accessing some of the subdivision lots is over the property in question. (*Ibid.*) Here, a county land surveyor testified that when map 1450 was recorded, numerous interior lots would have been landlocked absent access from the Public Sidewalk.

Additionally, South Coast Land Company developed subdivisions north and south of map 1450's area, and those subdivisions also included public rights-of-way of similar dimensions seaward of the oceanfront lot lines. There was evidence that the dedicated area in the southern development once contained a concrete sidewalk. Lastly, the county has treated the Public Sidewalk as a public right-of-way since 1912. The area appears on assessor maps as public property, and the county stopped assessing property taxes for the Public Sidewalk area when map 1450 was recorded.[5] In sum, after reviewing the entire record we conclude the court's finding the Public Sidewalk was dedicated to public use in 1912 is supported by substantial evidence.

Scott and Lynch alternatively argue Del Mar is estopped to deny it abandoned the property by never building a sidewalk on it, and by ignoring the private seawalls and other improvements for decades. It is well settled, however, that a public agency's mere nonuse of dedicated land does not show abandonment or give rise to an estoppel claim. (*City of Imperial Beach v. Algert* (1962) 200 Cal.App.2d 48, 51 [19 Cal.Rptr. 144]; *City of Sacramento v. Jensen* (1956) 146 Cal.App.2d 114, 123 [303 P.2d 549].) Further, Del Mar's failure to return the beach to the public until the beach overlay zone was enacted does not amount to a "clear affirmative rejection" of the Public Sidewalk area, as required by *Algert,* upon which Lynch and Scott rely, before estoppel will be applied against a public entity. (*City of Imperial Beach v. Algert, supra,* 200 Cal.App.2d at pp. 52-53.)

### 2. *Improvements*

 Scott and Lynch next contend they are entitled to just compensation for the seawalls, riprap and patios, even if they were built on public

---

[5]Taxes were assessed, however, for the seawalls and other improvements from at least 1957.

land. ▮ In proper cases, recovery in inverse condemnation is available for the taking or damaging of personal property. (*Sutfin* v. *State of California* (1968) 261 Cal.App.2d 50, 53 [67 Cal.Rptr. 665].) Generally, any actual physical injury to the property which is proximately caused by a deliberately designed and constructed public project is compensable without regard to foreseeability. (*Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 263 [42 Cal.Rptr. 89, 398 P.2d 129].) However, there are exceptions to this rule of liability without fault. "The decisive consideration is whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking." (*Clement* v. *State Reclamation Board* (1950) 35 Cal.2d 628, 642 [220 P.2d 897].)

"[U]nder the pressure of public necessity and to avert impending peril, the legitimate exercise of the police power often works not only avoidable damage but destruction of property without calling for compensation. Instances of this character are the demolition of all or parts of buildings to prevent the spread of conflagration, or the destruction of diseased animals, of rotten fruit, or infected trees where life or health is jeopardized." (*House* v. *L. A. County Flood Control Dist.* (1944) 25 Cal.2d 384, 391 [153 P.2d 950].) In the nonemergency situation, the government also has the power to declare what constitutes a nuisance and to abate it, after affording the owner reasonable notice and a meaningful opportunity to be heard. (*City of Costa Mesa* v. *Soffer* (1992) 11 Cal.App.4th 378, 383 [13 Cal.Rptr.2d 735]; *Rose* v. *City of Coalinga* (1987) 190 Cal.App.3d 1627, 1634 [236 Cal.Rptr. 124]; *Mohilef* v. *Janovici* (1996) 51 Cal.App.4th 267, 286 [58 Cal.Rptr.2d 721].) For instance, in *People* ex rel. *Dept. of Transportation* v. *Hadley Fruit Orchards, Inc.* (1976) 59 Cal.App.3d 49 [130 Cal.Rptr. 287], the court held there was no constitutional entitlement to compensation for the loss of advertising billboards removed as public nuisances. (*Id.* at p. 53.)

▮ Here, the court determined it was bound by Del Mar's administrative findings that the improvements were nuisances, because Scott and Lynch failed to challenge the findings in a mandamus action. (Code Civ. Proc., § 1094.5.) We need not determine whether that was error, as Scott and Lynch argue, because the evidence introduced at trial proved that the seawalls, riprap and patios were abatable nuisances per se. "[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record." (*Blue Chip Enterprises, Inc.* v. *Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706, 712 [139 Cal.Rptr. 651].)

" ' "[T]he legislature has the power to declare certain uses of property a nuisance and such use thereupon becomes a nuisance *per se*." [Citation.]

. . . Nuisances *per se* are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance.' [Citations.]" (*City of Costa Mesa* v. *Soffer*, *supra*, 11 Cal.App.4th at p. 382, fn. omitted.) The Legislature has declared that the obstruction of a public right-of-way is an abatable nuisance. (Civ. Code, §§ 3479, 3480, 3491.) A city may "prohibit and prevent encroachments upon or obstruction in or to any sidewalks, street, alley, lane, court, park, or other public place and provide for the removal of such encroachment or obstruction." (Gov. Code, § 38775.) Additionally, under Del Mar's Beach Overlay Zone ordinance, any nonconforming structure constitutes a public nuisance subject to abatement at the owner's expense. (Del Mar. Mun. Code, § 30.50.100A & B.)

As discussed above, the evidence established. (1) the Public Sidewalk on map 1450 was dedicated to public use in 1912, and (2) the private seawalls, riprap and patios on the Scott and Lynch properties completely obstructed public access to the Public Sidewalk area. Accordingly, the improvements were nuisances per se, and Del Mar had the power to declare them such and remove them, after complying with due process requirements.[6] Compensation is not constitutionally mandated, even if, as Scott and Lynch contend, appropriate permits were obtained for the original construction of the improvements. (See *People* ex rel. *Dept. of Transportation* v. *Hadley Fruit Orchards, Inc.*, *supra*, 59 Cal.App.3d at pp. 53, 55-56; see also *County of El Dorado* v. *Al Tahoe Investment Co.* (1959) 175 Cal.App.2d 407, 410-412 [346 P.2d 205] [removal of gasoline pumps installed on public highway pursuant to permit not a compensable taking].)

### 3. *Increased Exposure to Storms, Vandalism and Burglary*

Lastly, Scott and Lynch contend they are at least entitled to the diminution in value of their homes caused by increased vulnerability to storms, vandalism and burglary. They rely upon the testimony of Scott A. Jenkins, Ph.D., an oceanographer, that seawalls were needed to protect the homes from "any event with a wave height significantly greater than an average wave," and if the seawalls had not been in place during a 1988 storm, the homes would have sustained damages. Additionally, Ronald M.

---

[6]Scott and Lynch argue Del Mar's only basis for declaring their improvements nuisances was that they caused beach erosion and there was insufficient evidence introduced at trial to support such a finding. Del Mar's ordinances also declared the improvements to be nuisances because they blocked public access to the beach and thus the evidence regarding erosion is immaterial.

Noble, an engineer, testified that absent seawalls, the residences could be flooded or destroyed in a significant storm.[7]

■ An action for inverse condemnation lies "where the taking results in property damage [or] other depreciation in market value . . . . [Citations.]" (*Jordan* v. *City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1257 [54 Cal.Rptr.2d 340].) However, ". . . a diminution in property value is not a 'taking or damaging' of the property, but an element of the measure of just compensation when such taking or damaging is *otherwise proved*." (*San Diego Gas & Electric Co.* v. *Superior Court, supra*, 13 Cal.4th at p. 942, italics added.) Thus, for instance, ". . . a zoning action which merely decreases the market value of property does not violate the constitutional provisions forbidding uncompensated taking or damaging . . . ." (*HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 518 [125 Cal.Rptr. 365, 542 P.2d 237].) There, the court noted: "Plaintiffs fail to distinguish between the 'damaged' property which is a requisite for a finding of compensability and the 'damages' by which courts measure the compensation due. Reasoning backwards, plaintiffs erroneously contend that since they can calculate damages (by measuring decline in market value), they must have been 'damaged' within the meaning of the state Constitution." (*Ibid.*)

■ Likewise, Scott's and Lynch's claims that Del Mar's removal of the protective structures caused their properties to decrease in value fails to establish a constitutionally compensable "taking or damaging." To the contrary, as discussed above, Del Mar's abatement of the encroachments on public land was a reasonable exercise of its police power, which does not give rise to an inverse condemnation action.[8] (*People* ex rel. *Dept. of Transportation* v. *Hadley Fruit Orchards, Inc., supra*, 59 Cal.App.3d 49, 53.)

---

[7]Scott and Lynch characterize their alleged damages as "severance damages" under Code of Civil Procedure section 1263.410, subdivision (a), which applies to eminent domain actions and provides: "Where the property acquired is part of a larger parcel, in addition to the compensation awarded . . . for the part taken, compensation shall be awarded for the injury, if any, to the remainder." Where appropriate, eminent domain principles apply to inverse condemnation actions. (*Chhour* v. *Community Redevelopment Agency* (1996) 46 Cal.App.4th 273, 280 [53 Cal.Rptr.2d 585].) There could be no "severance damages" here, however, because Del Mar did not acquire any part of Scott's or Lynch's real property.

[8]In *Scott* v. *City of Del Mar* (Nov. 1, 1994) D020803 (nonpub. opn.), we stated that even if the seawalls and other improvements were on public property, "the appellants' complaint can be read as including a claim for compensation based on damages (threatened physical damage from storms, vandalism and burglary) caused by a public works type project (removal of patios, seawalls and rip rap)." Scott and Lynch assert this establishes their entitlement to damages. The statement again teaches that an appellate court would do well to avoid ill-considered dicta. In any event, the statement is no more than a recitation of the pleading allegations and does not establish any right to compensation under the circumstances here.

Our holding makes it unnecessary to consider whether the court erred in determining damages were unavailable because Scott and Lynch failed to obtain shoreline protection permits to build new seawalls. Again, we review the court's ruling, not its rationale.

## DISPOSITION

The judgment is affirmed. Del Mar to recover costs on appeal.

Nares, J., and Haller, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 23, 1997.