Filed 5/27/26  City of South Gate v. South Gate Investment Group CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CITY OF SOUTH GATE,<br><br>    Cross-complainant and Respondent,<br><br>    v.<br><br>SOUTH GATE INVESTMENT GROUP, INC.,<br><br>    Cross-defendant and Appellant. | B335997<br><br>Los Angeles County<br>Super. Ct. No. 20NWCV00499 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Brian F. Gasdia and Lee W. Tsao, Judges. Affirmed.

Law Office of Adam Dolce and Adam Dolce for Cross-defendant and Appellant.

FBT Gibbons, Raul F. Salinas, Rick D. Navarrette and William M. Hensley for Cross-complainant and Respondent.

_____

Cross-defendant South Gate Investment Group, Inc. (SGIG) is the co-owner[1] of a commercial property on Atlantic Avenue in South Gate. In 2020, Cross-complainant City of South Gate (the City) notified SGIG a fence, landscaping, lighting, and other improvements SGIG's predecessor had installed were encroaching on the City's Atlantic Avenue right of way. The City planned to remove these improvements in order to widen the adjoining sidewalk.

SGIG, which claimed the encroaching improvements were installed at the City's oral direction decades ago, brought suit against the City for quiet title and a declaration that SGIG owned the land under the improvements.

The City cross-complained against SGIG and also demurred to SGIG's causes of action. The City argued that any alleged oral agreement could not bind the City. The trial court sustained the City's demurrer and later granted the City's motion for partial summary adjudication on two causes of action the City asserted in its first amended cross-complaint (FAXC)—nuisance and quiet title. It later entered judgment for the City on those causes of action. It is from that judgment SGIG now appeals.

The only issues raised on appeal are whether the trial court erred in summarily adjudicating the City's nuisance and quiet title causes of action. For the reasons that follow, we find no error and affirm.

---

[1]  SGIG's tenant in common, AJG Realty, Inc., is not a party to this appeal.

## BACKGROUND

## I. Factual Background

The property at issue (the Property) is part of an assemblage of commercial parcels originally delineated on a 1948 recorded tract map. Recorded with the map is a dedication of the roads shown on it, which include Atlantic Avenue and Chakemco Street. The Property lies at the northeast corner of Atlantic and Chakemco. Per the map, its predominant western boundary is 50 feet from the centerline of Atlantic. Its predominant southern boundary is 20 feet from the centerline of Chakemco.

SGIG's predecessor, California Truck Sales (CTS) purchased five lots, which include the land constituting the Property, in 1995. At the time, the land was undeveloped, and CTS set about developing it for commercial use—the purchase, sale, and storage of semi-trucks. According to one of SGIG's principals, the City required CTS to "install a wrought-iron fence, pole lines, greenery, curbs, and lights" along the Property's boundary with Atlantic Avenue (collectively, the Improvements) as a condition of its development.

This requirement was communicated by Chon Cervantes, who was the City's Director of Building and Safety at the time.[2] The SGIG principal testified CTS installed the Improvements where DBS Cervantes directed it to, and DBS Cervantes took measurements at the conclusion of the installation to confirm the

_____

[2] Because former Director of Building and Safety Chon Cervantes has the same surname as the City's current Director of Public Works Arturo Cervantes, we refer to the former as "DBS Cervantes" and the latter as "DPW Cervantes."

Improvements were in the right place. SGIG's principal believed installing these improvements cost CTS over $200,000.

At some point, a City sidewalk, about six feet wide, was installed along Atlantic Avenue adjacent to the Improvements.

In 2010, a different SGIG predecessor obtained approval of an adjustment to the internal lot lines of the assemblage CTS purchased in 1995. No adjustment was made to the external lot lines through this process. The current boundaries of the Property are as shown on a map recorded as part of the lot line adjustment process. The map does not show the location of the Improvements.

Several years later, the City made plans to improve the streets bordering the Property and informed SGIG the Improvements were encroaching on the City's right of way. The City asserted the encroachment was approximately 100 feet long and five feet wide—the area within SGIG's wrought iron fence along Atlantic Avenue. The City informed SGIG that the City would remove the Improvements and SGIG would then be responsible for reinstalling them behind the actual boundary line.

In August 2020, the City sent SGIG a letter advising that work was about to commence, and removing the Improvements would be "one of the first items." In response, SGIG filed a complaint against the City.

According to the City, the Improvements remain where they were installed in the 1990's and the City's improvement project remains on hold as a result.

## II.    Procedural Background

SGIG's complaint did not dispute the Improvements encroached on the boundary line described in property records. Instead, SGIG alleged the Improvements reflected a different

4

boundary "agreed" by the parties "over twenty years ago," i.e., when the City directed the installation of the Improvements. It further alleged the City was estopped to assert rights over the area for the same reasons. By the complaint, SGIG sought a determination that "the affected area claimed by the City . . . to be encroached upon by [SGIG], belongs to [SGIG]." It complained of the potential cost of reinstalling the Improvements "and the loss of approximately 500 square feet" from the Property if its requested relief were not granted.

The City responded with a demurrer and cross-complaint.

The trial court sustained the City's demurrer with leave to amend. SGIG waived its right to amend and stipulated to entry of a judgment of dismissal with prejudice but purported to preserve its right to appeal such dismissal. Judgment entered accordingly.

A few months later, the City filed the FAXC alleging five causes of action: (1) public nuisance; (2) quiet title; (3) interference with easement; (4) ejectment; and (5) declaratory relief. SGIG unsuccessfully demurred and then answered.

In March 2023, the City filed a motion for summary adjudication of its causes of action for nuisance and quiet title (the Motion). SGIG opposed it.

In advance of the hearing on the Motion, the trial court issued a tentative ruling. The tentative proposed to grant the Motion as to the quiet title cause of action but deny it as to the nuisance cause of action on the ground SGIG had shown a triable issue of fact regarding encroachment. Per the tentative, the City had met its burden of production to show the Improvements were within its right of way, but SGIG had created a dispute through evidence they were not. Specifically, the trial court pointed to a document marked as exhibit 6 at SGIG's deposition of DPW Cervantes. As explained in the tentative: "Exhibit 6 is a site plan

5

and radius map (Site Map) . . . and [DPW] Cervantes stated in his deposition that the Site Map showed that the property line behind which the Improvements were installed does not encroach on the City's right of way easement."

At the hearing, however, the trial court sustained the foundation objection the City had made to exhibit 6 at DPW Cervantes's deposition. The hearing was not reported, but the court's order reflects SGIG argued exhibit 6 was automatically admissible because the City had produced it to SGIG in discovery. The court rejected that premise. Without exhibit 6 to create a triable issue, the court concluded the City was entitled to summary adjudication of its nuisance cause of action as well as that for quiet title.

SGIG filed a motion for reconsideration of the trial court's summary adjudication order, which the court denied.

The matter then proceeded to a court trial on the remedies for the City's nuisance and quiet title causes of action (the parties stipulated to dismissal of the City's other three causes of action). The trial court entered a permanent injunction enjoining SGIG's obstruction of the City's right of way and authorizing the City to demolish and remove the encroaching Improvements. It also entered judgment quieting title in favor of the City to the right of way adjacent to the Property measuring 50 feet from the centerline of Atlantic Avenue.

SGIG appealed.

## DISCUSSION

I. **Summary Adjudication Standard and Standard of Review**

A plaintiff may move for summary adjudication on a cause of action. (Code Civ. Proc., § 437c, subd. (f)(1).) " 'A summary

adjudication motion is subject to the same rules and procedures as a summary judgment motion.' " (*Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1157.) Thus, the moving plaintiff bears the initial burden of showing there is no defense to a cause of action if it has proved each element of the cause of action entitling it to judgment on the cause of action. (§ 437c, subd. (p)(1).) Once the plaintiff has met that burden, the burden shifts to the defendant to "set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (*Ibid*.) Summary adjudication of a cause of action is appropriate only "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to [adjudication] as a matter of law." (*Id*., subd. (c); *Butte Fire Cases*, at p. 1157.)

An issue of fact is "material" if that fact is essential to the judgment (*Riverside County Community Facilities Dist. v. Bainbridge 17* (1999) 77 Cal.App.4th 644, 652–653); evidence that does not bear upon the legal issues in question is not material (*Monastra v. Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1635). A material fact issue is triable if the evidence and inferences therefrom would allow a reasonable juror to find the underlying material fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"The standard of review that applies to an order granting summary adjudication is . . . the same standard of review that applies to an order granting a motion for summary judgment." (*DiCarlo v. County of Monterey* (2017) 12 Cal.App.5th 468, 488.) Our review is therefore independent. (See *Scheer v. Regents of University of California* (2022) 76 Cal.App.5th 904, 913.) " 'We determine whether the court's ruling was correct, not its reasons

or rationale. . . . ' In performing our de novo review, we view the evidence in the light most favorable to [the opposing party]." (*Ibid.,* citations omitted.)

## II.   Analysis

### A.   Nuisance

Civil Code section 3479 provides, in relevant part: "Anything which . . . unlawfully obstructs the free passage or use, in the customary manner, of any . . . public . . . street . . . is a nuisance." For these purposes, "[t]he sidewalks of a public street of a city are parts of the street." (*Marini v. Graham* (1885) 67 Cal. 130, 132.)

Civil Code section 3480 defines a public nuisance as a nuisance "which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

Civil Code section 3491 authorizes the abatement of a public nuisance and section 3494 authorizes a public body, like the City, to pursue abatement.

SGIG concedes obstruction of a sidewalk is "a nuisance *per se*—meaning the fact of the obstruction is sufficient to establish the claim as a matter of law." (Citing *Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1348.)

SGIG argues summary adjudication of the City's nuisance cause of action was inappropriate for several reasons. We address these in turn. All other issues raised below and not renewed on appeal are waived. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.)

### 1. The *Berkeley* Case

SGIG first argues that, setting aside any factual dispute with the City, the Improvements cannot constitute a nuisance because they do not block any existing sidewalk; just a proposed sidewalk. SGIG relies exclusively on *Berkeley v. Gordon* (1968) 264 Cal.App.2d 461 (*Berkeley*) for support. We conclude *Berkeley* is inapposite.

In that case, the defendants were the owners and lessees of a commercial property which had a basement extending beneath a city sidewalk. The city indisputably had superior rights to the subsurface area beneath the sidewalk. When the city proposed to renovate the sidewalk and add a streetlight and trees, which would use some of that subsurface area, the city demanded the defendants remove the encroaching portion of the basement. They refused, but offered the city possession of the property to undertake the work itself. The city sued, asserting the encroachment was a nuisance. The trial court concluded "the existence of the basement under the sidewalk did not constitute a public nuisance within the meaning of Civil Code section 3479," but, in recognition of the city's superior rights, authorized it to proceed with its construction work at any time and recover its abatement costs from the defendants. (*Berkeley*, *supra*, 264 Cal.App.2d at pp. 463–464.)

Addressing the nuisance issue, the *Berkeley* court framed the relevant question as follows: "[W]hether the structure in question unlawfully obstructs free passage of the public street or use of the street in the customary manner." (*Berkeley*, *supra*, 264 Cal.App.2d at p. 465.) The court recognized California authorities holding that a nuisance arises from "actual obstructions of traffic [citation]; surface or overhanging

structures on a public way [citations]; structures that are illegal in that they encroach upon a street or road without required permission [citation]; or other encroachments that actually interfere with or obstruct traffic." (*Ibid*.) It found none of those authorities held a "subsurface structure that does not interfere with the public's use of the street is a nuisance." (*Id*. at pp. 465–466.)

To the contrary, California authorities recognized "the abutting owner who owns to the center of the street may exercise any and all rights of dominion over his interest as are not inconsistent with the public easement in the street." (*Berkeley, supra*, 264 Cal.App.2d at p. 466.) Authorities from other jurisdictions showed "an abutting owner generally has the right to construct areaways, cellars, and vaults under the street provided that he does not thereby interfere with the public easement." (*Ibid*.)

The *Berkeley* court noted the defendants' "50 years' possession" of the subsurface area "with the acquiescence of the municipality [wa]s a strong basis for the inference that the City consented to the basement's presence"; and there was "no evidence . . . the encroachment of the basement pose[d] any danger to passers-by or users of the streets in general or that it [wa]s illegal." (*Berkeley, supra*, 264 Cal.App.2d at p. 466.)

Based on its reasoning, *Berkeley* is properly limited to cases involving subsurface encroachments of public rights of way. In contrast to surface encroachments, such encroachments do not "obstruct[] free passage of the public street or use of the street in the customary manner." (*Berkeley, supra*, 264 Cal.App.2d at p. 465.) This is a dispositive distinction under the statutory definition of nuisance. (See Civ. Code, § 3479.)

10

More compelling is *Scott v. City of Del Mar* (1997) 58 Cal.App.4th 1296 (*Scott*). *Scott*, like the present case, concerned an above-ground obstruction of an unimproved sidewalk right of way. In *Scott*, a developer dedicated a strip of land in a seaside subdivision in Del Mar for public use. Recorded maps from 1912 identified the strip as "Public Sidewalk," though the city never built a sidewalk on it. (*Id.* at pp. 1303, 1304.) At some point, private property owners erected seawalls to protect their beachfront properties in the right of way. The property owners repaired and expanded these encroaching structures in 1983, and the city gave notice to remove them within 10 days. (*Id.* at p. 1300.) No further action was taken at that time and the owners did not remove the structures.

Five years later, Del Mar adopted an ordinance to protect public access to and along the shoreline. The ordinance established a "shoreline protection area," which included the dedicated sidewalk right of way, and directed removal of all preexisting nonconforming structures. (*Scott, supra,* 58 Cal.App.4th at p. 1300.) The city declared the improvements encroachments and directed the property owners to remove them. When they complied only in part, the city removed those that remained. The property owners then sued the city. (*Id.* at p. 1301.)

One of the issues on appeal was whether the encroaching improvements were nuisances, as the government owes a property owner no compensation for abating a nuisance. (*Scott, supra*, 58 Cal.App.4th at p. 1305.) The *Scott* court found them nuisances *per se*. (*Ibid.*) Citing Civil Code sections 3479, 3480, and 3491, it explained "[t]he Legislature has declared that the obstruction of a public right-of-way is an abatable nuisance." (*Scott*, at p. 1306.) It was sufficient that "(1) the Public Sidewalk

11

[right of way] was dedicated to public use in 1912, and (2) the private [encroaching improvements] completely obstructed public access to the Public Sidewalk area." (*Ibid*.) This was so even though the city had "never buil[t] a sidewalk on it," had "ignor[ed] the . . . improvements for decades" (*id*. at p. 1304), and "appropriate permits were obtained for the original construction of the improvements" (*id*. at p. 1306).

*People v. Henderson* (1948) 85 Cal.App.2d 653, 656 (*Henderson*) is in accord: "It is a well-settled principle of common law, which has frequently been embodied in statutory form, that a structure maintained upon a public roadway is unlawful [citations], and is a nuisance *per se* subject to abatement at the instance of proper authority. [Citations.] It is no defense to an action based thereon that the structure is off the traveled part of the highway or that sufficient areas remain to allow public use of the right of way in the accustomed manner."

We therefore reject SGIG's arguments that, setting aside any factual disputes, reversal is warranted under *Berkeley*.

### 2. SGIG Failed to Show a Disputed Issue of Material Fact

#### a. The Site Plan Deposition Exhibits

In support of its Motion, the City submitted a professional survey showing the Improvements encroach upon the City's Atlantic Avenue right of way by five to six feet. SGIG argues two exhibits its counsel showed DPW Cervantes during his deposition (identified as exhibit 6 and exhibit 7, respectively), create a triable issue as to whether the Improvements are encroaching. SGIG submitted these exhibits, as attachments to excerpts of the deposition, as part of its opposition evidence. SGIG contends the trial court erred in excluding exhibit 6 and, in

12

any event, exhibit 7 is adequate to create a factual issue. We disagree.

### i. The Trial Court Did Not Abuse Its Discretion in Excluding Exhibit 6

SGIG contended exhibit 6 was submitted in connection with the lot line adjustment, and provided evidence that the Improvements are beyond the 50-foot right-of-way easement claimed by the City and thus do not encroach. The City objected on foundation grounds as DPW Cervantes had not personally reviewed the technical aspects of the plan.

In the absence of a more specific objection, the assertion that a writing lacks foundation generally raises the threshold question of authenticity. A party offering a writing as evidence bears the burden of establishing it is authentic. (Evid. Code, § 403, subd. (a)(3), § 1401, subd. (a); *People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) This requires proof " 'the writing was made or signed by its purported maker.' " (*Goldsmith*, at p. 266.) The proponent's burden is met "when sufficient evidence has been produced to sustain a finding that the document is what it purports to be." (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 321.)

Again, the trial court's ruling on the Motion suggests SGIG's sole response to the City's foundation objection was that the City produced exhibit 6 in discovery. There was evidence to this effect. The court was correct that this was inadequate to defeat the objection. " 'Not every document that comes out of an opposing party's files is automatically admissible[;]' . . . more is required to establish admissibility." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 854.)

13

On appeal, SGIG relies on Evidence Code section 1414 to argue the trial court erred in refusing to admit exhibit 6. SGIG forfeited this argument by failing to raise it below, citing section 1414 only in a "see also" parenthetical divorced from any reasoned argument. (*Lorenzana v. Superior Court* (1973) 9 Cal.3d 626, 640 [party may not raise for first time on appeal a new theory to support or contest admissibility].)

Even if we were to consider it, SGIG's argument would fail. Evidence Code section 1414 provides a writing may be authenticated by evidence it "has been acted upon as authentic by the party against whom it is offered." (*Id.,* subd. (b).) SGIG offers no such evidence here. It argues "the City relied on a survey as a condition precedent to approving a lot line-adjustment to the Property. The City produced the survey leading to its approval of the lot line-adjustment." Beyond a rough temporal relationship and the fact that the City had possession of exhibit 6, there is no evidence the City relied on exhibit 6 in approving the lot line adjustment. In fact, the survey the City identified as operative for purposes of the lot line adjustment—a recorded document attached to the FAXC—is not the same as exhibit 6. Moreover, DPW Cervantes testified exhibit 6 "doesn't look like a typical lot line adjustment document" and he "d[id]n't know that [it] was submitted as part of the lot line adjustment process." In short, the only evidence SGIG offered to establish the City's reliance on exhibit 6 was its own speculation.

Perhaps recognizing this, SGIG offers its evidence was "sufficient[]" to authenticate exhibit 6, "at least for purposes of opposing the [Motion]." This misconstrues the law in two ways. First, the Evidence Code is not relaxed in the summary judgment context. (See *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th

14

755, 761.) The rules of liberal construction at summary judgment apply only to admissible evidence (*ibid.*), not admissibility. Second, SGIG's claim of a "sufficient[]" showing of admissibility falls short of showing an abuse of discretion.

### ii.     Exhibit 7

SGIG cannot circumvent the trial court's exclusion of exhibit 6 by relying on the similar exhibit 7.

Initially, we note exhibit 7, as it appears in our record, is blurry in places and not clearly legible. The only basis for us to understand SGIG's desired use of the document is the transcript of DPW Cervantes's deposition. The most illuminating portion is as follows: "[SGIG'S COUNSEL]: . . . Just that according to this survey map, the 50 feet to—from center line, it looks like it's holding down the current boundary to the property; right? [¶] [DPW CERVANTES]: Yes." We do not think this ambiguous record is adequate to show a triable fact issue as to encroachment.

Even if it were, we are unsatisfied that SGIG timely called the trial court's attention to exhibit 7. As the court in *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698 explained, " '[t]he parties must call the court's attention to issues they deem relevant. " 'In the hurry of trial many things may be, and are, overlooked which could readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them.' " ' " If parties were allowed to raise points for the first time on appeal, those " 'opposing and losing summary judgment motions could attempt to embed grounds for reversal on appeal into every case by their silence.' " (*Ibid.*)

15

Here, SGIG urges the adequacy of exhibit 7 to create a triable issue "was brought to the Trial Court's attention on reconsideration [citation], [but] neither the City nor the Trial Court addressed it in their opposition papers or eventual ruling." SGIG fails to acknowledge that it only mentioned exhibit 7 in its *reply* in support of its motion for reconsideration. It did not mention it in the motion itself. (See *Schram Construction, Inc. v. Regents of University of California* (2010) 187 Cal.App.4th 1040, 1052, fn. 7 [issue raised for first time in reply brief before trial court waived on appeal].) And, based on the settled statement, SGIG did not raise exhibit 7 at the hearing on the Motion, arguing only that exhibit 6—the only one of the two produced by the City—showed a factual dispute. Had SGIG clearly indicated its intent to rely on exhibit 7 below,[3] the City and the court could have addressed the matter.[4] SGIG did not; it cannot now rely on exhibit 7 as grounds for reversal.

---

[3]    We note that, in support of its specific claim encroachment was "[d]isputed" in its separate statement, SGIG did not cite exhibit 7 (or exhibit 6, for that matter). Its mention of these exhibits elsewhere in the separate statement did not alert the trial court or the City of its intention to rely on these exhibits as it does now on appeal to argue a factual dispute.

[4]    In any event, we doubt the trial court would have found a triable issue based on exhibit 7, which the City did not produce and DPW Cervantes did not recognize, given its ruling on exhibit 6. Even though the City did not object to exhibit 7, the court had authority to sustain its own objection as an obvious corollary to its ruling on the City's objection to exhibit 6. (See *Patrick v. Superior Court* (1934) 139 Cal.App. 1, 4–5 [" '[E]ven where no objection is made, but the court excludes evidence of its own motion, the ruling will be sustained, if the evidence was for

### b. SGIG Did Not Raise a Triable Issue as to Consent

SGIG asserts lack of consent is an element of public nuisance, and that here, the City consented to the Improvements by directing SGIG's predecessor to install them. There is authority to suggest otherwise where, as here, the only remedy sought is abatement. (See *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1139 ["we do not suggest that consent of an owner/lessor can impede the *abatement* of a public nuisance"].)

Further, as already mentioned, it is impossible to reconcile SGIG's assertion that consent is an element of the City's nuisance cause of action where SGIG conceded "[o]bstructing a public right-of-way . . . is considered a nuisance *per se*—meaning the fact of the obstruction is sufficient to establish the claim as a matter of law."[5] Case law is in accord. (See *Scott, supra,* 58 Cal.App.4th at p. 1306 [obstructing public right of way nuisance per se]; *Henderson, supra,* 85 Cal.App.2d at p. 656 [same]; *City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1163–1164 [" '[W]here the law expressly declares something to be a nuisance, then no inquiry beyond its existence need be made . . . .' [Citation.] ' "Nuisances *per se* are so regarded because no proof is required, beyond the actual fact of their existence, to

---

any reason inadmissible' "], quoting *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 330.)

[5] SGIG notes the FAXC contains allegations the City did not consent to SGIG's encroachment and identified lack of consent as an undisputed fact. This does not necessarily render the fact material for purposes of summary adjudication. (*Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 773.)

establish the nuisance.' " "]; cf. *People ex rel. Dept. of Transportation v. Outdoor Media Group* (1993) 13 Cal.App.4th 1067, 1078 (*Outdoor Media*) ["[e]quitable defenses such as estoppel do not apply [to a cause of action for] nuisance per se"].)

In a similar vein, even if lack of consent were an element of the City's nuisance cause of action, the City lacked authority to give that consent. There can be no consent to an illegal activity. Again, the Legislature has made unlawful the obstruction of public rights of way. (*Scott, supra*, 58 Cal.App.4th at p. 1306, citing Civ. Code, §§ 3479, 3480, 3491; see also Pen. Code, §§ 370–372.) While municipalities have authority to legislatively legalize obstruction of a right of way (see *Ex parte Taylor* (1890) 87 Cal. 91, 94, citing *Marini v. Graham, supra*, 67 Cal. 130), SGIG points to no law authorizing the obstruction in this case. As such, it remains unlawful and cannot be cured by any purported consent. (See *Hansen Brothers Enterprises, Inc. v. Board of Supervisors* (1996) 12 Cal.4th 533, 564 ["the county lacks the power to waive or consent to violation of the zoning law"]; *Western Surgical Supply Co. v. Affleck* (1952) 110 Cal.App.2d 388, 392 [state officials lacked the power to consent to statutory violations]; *Fontana v. Atkinson* (1963) 212 Cal.App.2d 499, 507 [city officials lacked power to consent to violation of land use ordinance].)

Finally, the facts SGIG offers to show consent do not constitute consent by the City as a matter of law. SGIG's evidence that an individual City employee, DBS Cervantes, directed and consented to the installation of the Improvements in the City's right of way does not amount to consent on the part of the City. " ' "No government, whether state or local, is bound to any extent by an officer's acts in excess of his . . . authority." ' " (*Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th

18

104, 109.) " ' "One who deals with [a] public officer stands presumptively charged with a full knowledge of that officer's powers, and is bound at his . . . peril to ascertain the extent of his . . . powers to bind the government for which he . . . is an officer, and any act of an officer to be valid must find express authority in the law or be necessarily incidental to a power expressly granted." ' " (*Ibid.*)

SGIG points to no law giving a City employee authority to consent to an encroachment in the City's right of way. In a separate section, SGIG argues the City's municipal code authorized the director of public works to "determine the public right-of-way consistent with the City's general plan, master plan for streets and highways, or the subdivision code." (Citing So. Gate Mun. Code, § 5.32.030, subd. (A).) This is of no help to SGIG for two reasons. First, SGIG fails to provide competent evidence that DBS Cervantes was the director of public works. The only evidence it offers to this effect are declarations by its principals that DBS Cervantes was the "Director of Building and Safety," which they "believe, included Public Works." This conclusory statement of belief does not create a fact dispute. Second, SGIG fails to show ceding a portion of the City's right of way to private use is "consistent with the City's general plan, master plan for streets and highways, or the subdivision code."

For all these reasons, SGIG did not raise a triable issue regarding the City's consent.

### c.     Civil Code Section 3482

Section 3482 of the Civil Code provides: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." This exception is given a " 'narrow construction.' " (*Chase v. Wizmann* (2021) 71 Cal.App.5th 244,

19

254.) " ' " 'A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the *express terms* of the statute under which the justification is made, *or by the plainest and most necessary implication* from the powers expressly conferred, *so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury.*' " ' [Citations.] 'A requirement of "express" authorization embodied in the statute itself [e]nsures that an unequivocal legislative intent to sanction a nuisance will be effectuated, while avoiding the uncertainty that would result were every generally worded statute a source of undetermined immunity from nuisance liability.' " (*Id.* at pp. 254–255.)

As the trial court found on SGIG's motion for reconsideration, SGIG fails to identify any statute or ordinance that authorizes it to violate the express prohibition, contained in Civil Code section 3479, on obstructing a public right of way. For reasons already stated, none of the City's municipal code provisions SGIG cites do so, either directly or by implication.

### d. Equitable Estoppel

SGIG argues the trial court erred in resolving its equitable estoppel defense as a matter of law. As noted above, SGIG conceded obstructing a public right of way is a nuisance per se. "Equitable defenses such as estoppel do not apply [to a cause of action for] nuisance per se." (*Outdoor Media, supra*, 13 Cal.App.4th at p. 1078.)

While this should fully resolve the issue, SGIG cites one case, *Imperial Beach v. Algert* (1962) 200 Cal.App.2d 48 (*Imperial Beach*), in which equitable estoppel applied to prevent a city from

reclaiming a parcel which had been dedicated for street use. *Imperial Beach* does not compel reversal here.

As explained in *Imperial Beach*, estoppel may be applied against a public agency "only in those special cases where the interests of justice clearly require it." (*Imperial Beach, supra,* 200 Cal.App.2d at p. 52.) "[T]he facts upon which such an estoppel must rest go beyond the ordinary principles of estoppel and each case must be examined carefully and rigidly to be sure that a precedent is not established through which, by favoritism or otherwise, the public interest may be mulcted or public policy defeated." (*Ibid.*) Estoppel can apply " 'in the land use context in only "the most extraordinary case where the injustice is great and the precedent set by the estoppel is narrow." ' " (*Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1263.) "[T]he existence of estoppel [against the government] is in part a legal question to the extent it involves weighing policy concerns to determine whether the avoidance of injustice in the particular case justifies any adverse impact on public policy or the public interest." (*Ibid.*)

Surveying case law on the subject, the *Imperial Beach* court recognized estoppel does not lie where a government made a " 'bare promise to abandon' " public property, neglected to use public property, allowed to ripen what would otherwise amount a claim for adverse possession, omitted public property from an official map, or levied taxes against an individual on public property. (*Imperial Beach, supra*, 200 Cal.App.2d at p. 52.) Government conduct in *Imperial Beach* went far beyond these circumstances. Neither the city nor the county ever acted on the dedication of the parcel at issue. They never used any part of it as a street. The county allowed the developer to prevent traffic access to the parcel. The city showed it as a private residential lot

21

on its official map. It zoned it residential. The county designated it as a privately owned parcel for taxation purposes. It sold the parcel to the defendant at a tax sale when the prior owner's taxes went unpaid. No one offered to refund the purchase price to the defendant. (*Id.* at p. 53.) The court held that "the sum total of all the facts . . . convinces us . . . this case presents one of those exceptional conditions in which estoppel against a governmental agency is justified and should be applied." (*Ibid.*)

To the extent estoppel could be a defense to nuisance per se, we find the facts presented in this case do not approach those in *Imperial Beach*. The facts in that case—particularly that the government sought to claw back a parcel it sold to the defendant without refunding his money—are truly extraordinary. (*Imperial Beach*, *supra*, 200 Cal.App.2d at p. 53.) By contrast, to hold that the say-so of a city worker without authority to approve encroachments is a defense to nuisance would undermine the government's ability to protect public rights of way. As this case illustrates, the City has been delayed in proceeding with a planned project for years because of SGIG's intransigence. Reducing the tools a municipality has to deal with encroachments would only serve to extend such delays.

## B. Quiet Title

SGIG last argues the trial court erred by entering judgment for the City on its quiet title cause of action because SGIG had abandoned its adverse claim against the City's right-of-way easement. SGIG admits it made an adverse claim when it sued the City alleging the area of its encroachment belonged to SGIG. But it contends such claim can no longer support the City's cause of action for quiet title because the trial court dismissed SGIG's cause of action with prejudice and SGIG admitted in its

22

opposition to the Motion that it conceded the City's ownership of the right-of-way easement.

In support of its position, SGIG cites *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1010. In that case, the Court of Appeal affirmed dismissal of the plaintiffs' quiet title causes of action against (i) a former lender and certain affiliated parties who sold the plaintiffs' former residence at a nonjudicial foreclosure sale; and (ii) the purchaser of the property. The lender parties argued they had no adverse claim to the property after selling it, and the court concluded the purchaser's interest had already been adjudicated in an unlawful detainer action, rendering the issue res judicata. (*Id.* at pp. 1010–1011.)

Here, no such facts are present. Although SGIG's causes of action claiming ownership of the property had been dismissed with prejudice, SGIG stated its intent to maintain rights to appeal that dismissal. Further, SGIG cites no authority that a defendant's concession in litigation can deprive a quiet title plaintiff of a judgment. Our Supreme Court long ago held the rule is to the contrary. As explained in *Water for Citizens of Weed California v. Churchwell White LLP* (2023) 88 Cal.App.5th 270, 281–282, "[a] property owner may bring a quiet title action 'to determine any adverse claim whatever. For if the defendant by his answer disclaims all interest whatever, judgment may, nevertheless, be entered against him, though in such case it must be without costs.' " (Quoting *Castro v. Barry* (1889) 79 Cal. 443, 447.)

## DISPOSITION

The judgment is affirmed. The City is entitled to its costs on appeal.

RICHARDSON, J.

WE CONCUR:

CHAVEZ, Acting P. J.

HOFFSTADT, J.*

---

* Presiding Justice of the Court of Appeal, Second Appellate District, Division Five assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.